Affirmed in Part, Reversed and Remanded in Part, and Majority and
Dissenting Opinions filed October 17, 2002
















Affirmed in
Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed
October 17,
 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00507-CV

____________

 

DRC PARTS & ACCESSORIES, L.L.C., Appellant

 

V.

 

VM MOTORI, S.P.A., Appellee

 

 

 

On Appeal from
the 151st District Court

Harris County, Texas

Trial Court
Cause No. 98-24396

 

 

 

M A J O R I
T Y   O P I N I O N

            This breach of contract and fraud
case arises from a dispute over the meaning of the term “non-exclusive” as used
by the parties in a contract for the purchase and resale of engine parts and
accessories.  Appellant DRC Parts &
Accessories, L.L.C. (“DRC”), appeals the entry of summary judgment in favor of appellee VM Motori, S.P.A. (“VM”).

 








Factual and
Procedural Background

            Prior to 1995, VM, an Italian
manufacturer and seller of industrial diesel engines and associated parts and
accessories, contracted with DRC, amongst others, to purchase and distribute
its products in North America.  In 1995, however, VM was purchased by Detroit
Diesel Corporation (“DDC”), an American manufacturer and distributor of diesel
engines and associated parts and accessories with an extensive network of
representatives in North America.  Despite the resultant diminution in its need
for the services of DRC, VM agreed to continue the relationship because of DRC’s extensive knowledge of VM’s
products.

            On May 14, 1996, VM and DRC entered into a
contract to define their new relationship. 
That agreement stated, in pertinent part:

VM . . . grants on a non-exclusive basis . . . DRC . . . the right to
purchase and sell VM diesel engine ORIGINAL SPARE PARTS for engine series
and/or engine model versions not in-current production by VM and VM ORIGINAL
ACCESSORIES for current and non-current series of engines, in the USA or Canada, hereinafter referred to as
the TERRITORY . . . .

This
“authorization to resell spare parts and accessories” was valid for twelve
months from the date of the contract, and was to be automatically renewed for a
further year unless terminated by either party upon sixty days’ written
notice.  Further, VM had the right to
revoke or modify the contract upon sixty days’ notice; DRC did not have a
similar right.  Finally, the contract
provided that it “substitute[d] and invalidate[d] any other former agreement.”

            Thereafter, DRC filed suit against
VM for breach of contract,[1]
alleging the contract gave it the exclusive right to sell parts for engines
that were no longer being produced by VM, and that VM had breached the
agreement by selling such parts directly to both its customers and DDC.  VM responded by counterclaiming that DRC had
breached contractual obligations under separate purchase order agreements for
the delivery of several industrial engines, and by moving for traditional and
no-evidence summary judgment on the basis that the contract unambiguously gave
DRC only a non-exclusive right to distribute non-current production engine
parts, and thus the contract had not been breached.

            The trial court granted summary
judgment in favor of VM on DRC’s breach of contract
claim without specifying the grounds therefor.  Subsequently, before resolution of VM’s counterclaim,[2] DRC filed
a Second Amended Petition: (1) reasserting the claim that VM breached DRC’s exclusive contractual right to sell parts for
non-current engines; and, (2) in the alternative, if the contract granted DRC
only a non-exclusive right, that VM committed fraud in inducing DRC to enter
into and continue performance under the contract by misrepresenting that DRC’s right would be exclusive.  VM moved for traditional summary judgment as
to both claims, and that motion was granted by the trial court.[3]  This appeal ensued.

Standards
of Review

            Where, as here, the trial court does
not state the grounds for granting summary judgment, and several grounds are
provided, we must determine if any of the grounds would support the grant of
summary judgment.  Rogers v. Ricane Enter., Inc., 772
S.W.2d 76, 79 (Tex.
1989).  Summary judgment is proper if the
defendant, as movant, disproves at least one element
of each of the plaintiff’s claims or establishes all elements of an affirmative
defense.  Am. Tobacco v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997).  The movant
has the burden of showing there are no genuine issues of material fact and it
is entitled to judgment as a matter of law. 
Nixon v. Mr. Prop. Mgmt. Co., Inc.,
690 S.W.2d 546, 548 (Tex.
1985).  In deciding whether there is a
disputed material fact issue precluding summary judgment, proof favorable to
the non-movant is taken as true and the court must
indulge every reasonable inference and resolve any doubts in favor of the non-movant.  Id. at 548–49.

            As distinguished from a traditional
summary judgment, we review a no-evidence summary judgment under the same legal
sufficiency standard as a directed verdict. 
Specialty Retailers, Inc, v. Fuqua,
29 S.W.3d 140, 146 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  A reviewing
court views all evidence in a light most favorable to the respondent against
whom the summary judgment was rendered, disregarding all contrary evidence and
inferences.  Id.; Merrell Dow Pharm.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  A no-evidence summary judgment is
properly granted if the respondent fails to bring forth more than a scintilla
of probative evidence to raise a genuine issue of material fact as to an
essential element of the respondent’s case. 
Tex. R. Civ.
P. 166a(i); Specialty Retailers, Inc., 29 S.W.3d at 146.  Less than a scintilla of evidence exists when
the evidence is “so weak as to do no more than create a mere surmise or
suspicion” of a fact.  Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex.
1983).  More than a scintilla of evidence
exists when the evidence “rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions.”  Burroughs
Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995).

Breach of
Contract: The Meaning of “Non-Exclusive”

            In its first point of error, DRC
contends the trial court erred in granting summary judgment on its breach of
contract claim because the contract suffers from an ambiguity that gives rise
to a question of fact.  Specifically, DRC
avers the term “non-exclusive,” as used in the contract, is subject to two
reasonable interpretations: (1) that VM retained the right to sell parts for
engines not in-current production to entities other than DRC; or (2) that
DRC  had the exclusive right to purchase
and sell parts for engines not in-current production.  We disagree.

            The primary concern of a court in
construing a written contract is to ascertain the true intent of the parties as
expressed in the instrument.  Nat’l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d 517, 520 (Tex. 1995); Lake
Charles Harbor & Terminal Dist. v. Bd. of Trs. of
the Galveston Wharves, 62 S.W.3d 237, 242–43 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).  If a written
contract is so worded that it can be given a definite or certain legal meaning,
then it is not ambiguous.  Nat’l Union, 907 S.W.2d at 520 (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)); Cook Composites, Inc. v. Westlake Styrene
Corp., 15 S.W.3d 124, 131 (Tex. App.—Houston [14th
Dist.] 2000, pet. dism’d).  Parol evidence is
not admissible for the purpose of creating an ambiguity.  Lake
Charles Harbor & Terminal Dist., 62 S.W.3d at 243 (citing Nat’l Union Fire Ins. Co., 907 S.W.2d
at 520; Universal C.I.T. Credit Corp. v.
Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (Tex. 1951)).

            However, where the language of a
contract is subject to two or more reasonable interpretations, it is said to be
ambiguous.  Kelley-Coppedge, Inc. v. Highlands Ins. Co.,
980 S.W.2d 462, 465 (Tex. 1998); Nat’l Union Fire Ins. Co., 907 S.W.2d at
520.  Whether a contract is ambiguous is
a question of law for the court to decide by looking at the contract as a whole
in light of the circumstances present at the time the contract was
executed.  Nat’l Union Fire Ins. Co., 907 S.W.2d at 520; see also Coker, 650 S.W.2d at 394. 
Only when a contract is first determined to be ambiguous may the courts
consider the parties’ interpretation and admit extraneous evidence to determine
the true meaning of the instrument.  Nat’l Union Fire Ins. Co., 907 S.W.2d at
520.

            An ambiguity does not arise simply
because the parties advance conflicting interpretations of the contract.  Forbau v. Aetna Life
Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994); Sun Oil Co. (Delaware) v. Madeley, 626
S.W.2d 726, 727 (Tex. 1981); see also Cook Composites, Inc., 15
S.W.3d at 131 (noting that “conflicting interpretations of a contract and
unclear and uncertain language do not necessarily mean a contract is
ambiguous”).  For an ambiguity to exist,
both interpretations must be reasonable. 
Nat’l Union Fire Ins. Co., 907
S.W.2d at 520; see also Glover v. Nat’l
Ins. Underwriters, 545 S.W.2d 755, 761 (Tex.
1977).  Thus, the appellate court must
decide whether there is more than one reasonable interpretation of the contract
such that a fact issue was created concerning the parties’ intent.  Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996).

            In the instant case, the contract
expressly “grants on a non-exclusive basis . . . DRC . . . the right to
purchase and sell VM diesel engine ORIGINAL SPARE PARTS for engine series
and/or engine model versions not in-current production by VM . . . .”  Considering this sentence in light of the
surrounding circumstances, we find the contract is not ambiguous.  The meaning is not genuinely uncertain and
doubtful.  Rather, the contract clearly
states that the relationship between VM and DRC as to these parts is to be
“non-exclusive,” and thus is not reasonably susceptible to the second
interpretation advanced by DRC, i.e.,
that it would have the exclusive right to purchase and sell parts for VM
engines not in-current production.

            “Because the contract is
unambiguous, we must give effect to the objective intention of the parties as
expressed or as is apparent in the written agreement.”  Gold
Kist, Inc. v. Carr, 886 S.W.2d 425, (Tex. App.—Eastland 1994, writ denied)
(citing Sun Oil Co. (Delaware), 626 S.W.2d at 731; City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515,
518 (Tex.
1968)).  Under the plain language of the
contract, DRC was not made the exclusive distributor of the engine parts in question.  Accordingly, VM did not breach the contract
by selling such parts directly to both its customers and DDC.  We overrule DRC’s
first point of error.

Fraud

            In its second, and alternative,
point of error, DRC complains genuine issues of material fact exist as to
whether VM committed fraud, and thus the trial court erred in granting summary
judgment as to that claim.  Specifically,
if the contract term “non-exclusive” is held to be unambiguous, DRC alleges it
was fraudulently induced to enter into and continue under the contract by VM’s misrepresentations that the term “‘non-exclusive’
referred to the type of parts to which DRC had the exclusive right of purchase,
not to VM’s ability to sell any parts to any person
or entity.”  Thus, DRC contends VM falsely
represented that the contract granted DRC the exclusive right to distribute
parts for “not in-current production” engines and that the term “non-exclusive”
was employed only because certain of these parts (“common parts”) were being
used in current production engines.

            VM, on the other hand, contends that
alleged misrepresentations which conflict with the terms of a written contract
are not fraudulent.  Relying upon Town North Nat’l Bank v. Broaddus, 569
S.W.2d 489 (Tex. 1978), VM
asserts that fraud can never be predicated on alleged misrepresentations that
conflict with the written terms of the contract.

            It is well established that
extrinsic evidence is not ordinarily admissible to add to, vary, or contradict
the terms of a written contract that is clear on its face.  Marburger v. Seminole
Pipeline Co., 957
S.W.2d 82, 86 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (citing Nat’l Union Fire Ins. Co., 907 S.W.2d at
521).  Without such a rule, the solemnity
of contracts would be extinguished.  However,
where one party’s assent is induced by deception, no contract exists because
there has been no mutuality of agreement. 
Moreover, such fraud can only be shown by extrinsic evidence.  Thus, parol
evidence is admissible to show fraud in the inducement.  Id.

            Fraud in the inducement may be
asserted either as an affirmative defense or as a cause of action.  When asserted as an affirmative defense, or
in an action to rescind the contract, the proponent usually seeks to add to,
vary, or contradict the terms of a written agreement.  Thus, the tension between the parol evidence rule and the principle that extrinsic
evidence is admissible to show fraud has led to confusing and sometimes
contradictory opinions.[4]  Compare
Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156, 162
(Tex. 1995) (holding a buyer is not bound by a written agreement to purchase a
building “as is” that he was induced to make because of a fraudulent
representation);  Dallas Farm Mach. Co, 307 S.W.2d at 239 (embracing the majority
position that parol evidence is admissible to
establish fraud in the inducement even in the face of a “merger” clause in a
written contract);  Edward Thompson Co. v. Sawyers, 234 S.W. 873, 874–75 (Tex. 1921)
(one who is entitled to avoid a written contract because it was induced by
fraud is no longer bound by any of its stipulations, including those relating
to representations or guaranties which induced its execution);  Rapid
Transit Ry. Co. v. Smith, 86 S.W. 322, 323 (Tex.
1905) (holding that a contract induced by a promise made in bad faith is voidable); and
contrast with Distributors Inv. Co.,
et al. v. H. L. Patton, 110 S.W.2d 47, 48 (Tex. 1937) (holding that oral
representations that conflict with the terms of a written contract are not
admissible to show fraud because otherwise a written contract would be of no
higher dignity than an oral one);  Billington, et al. v. Vest, 268 S.W.2d 705, 707
(Tex. Civ. App.—El Paso 1954, no writ) (holding that
attaching the label of fraud to the oral representations does not change their
character as inadmissible parol evidence).

            In Broaddus, the plaintiff sued three co-makers for recovery on a
promissory note.  Two of the co-makers
alleged they were fraudulently induced into signing the note by the plaintiff’s
representation that it would look solely to the third co-maker for payment of
the loan.  Town North Nat’l Bank v. Broaddus, 569 S.W.2d 489, 490 (Tex.
1978).  In its opinion, the Texas Supreme
Court cited with approval the case of Mitcham v. London, 110 S.W.2d
140, (Tex. Civ. App.—Austin 1937, no writ).  There the court of civil appeals confronted a
similar scenario where the maker of a promissory note claimed he had been
fraudulently induced into signing the note by deceptive promises allegedly made
by the plaintiff.  While acknowledging
that fraudulent misrepresentation can, in some situations, be asserted to
rescind a contract, the court declared:

The promise
here complained of as being intended not to be performed was a collateral one
in parol at variance with the written contract
entered into, and one proof of which the law does not admit.  If 
fraud could be predicated upon such promise and intention, then any
collateral parol agreement might be asserted to
contradict, vary, or even abrogate any written contract, under the guise of a
fraudulent intent not to perform such collateral parol
agreement.  The practical effect would be
to destroy the parol evidence rule altogether.

Id. at
142.  Adhering to this rationale, the
court held in Broaddus that extrinsic
evidence of fraud is admissible to avoid a promissory note only when the
evidence shows “some sort of trick, artifice, or device was employed by the
payee in addition to his representation to the maker that he would not be
liable.”  569 S.W.2d at 493.

            Broaddus,
however, is not applicable here.  “The
narrow holding of Broaddus is that
‘the mere representation by a payee to the maker that the maker will not be
liable on the note does not constitute fraud in the inducement so as to be an
exception to the parol evidence rule.’”  Strickland
v. Coleman, 824 S.W.2d 188, 192 (Tex. App.—Houston [1st Dist.] 1991, no
writ) (quoting Broaddus, 569 S.W.2d
at 492).  See also Garza v. Southland Corp., 836 S.W.2d 214, 220 (Tex.
App.—Houston [14th Dist.] 1992, no writ) (finding Broaddus is limited in its applications and “only held that a
negotiable instrument could not be altered by ‘parol
agreements or representations of a payee that a maker or surety will not be
liable thereon.’” (quoting Broaddus,
569 S.W.2d at 491)).

            Here, the contract at issue is not a
promissory note.  Moreover, unlike Broaddus, where fraud was asserted as an
affirmative defense, DRC is asserting fraud as a cause of action.  When fraud in the inducement is alleged as a
cause of action, the parol evidence rule is not
directly implicated because the plaintiff does not seek to vary the terms of
the contract;  rather, the plaintiff
seeks tort damages for the manner in which the contract was procured.  In other words, “the legal duty not to
fraudulently procure a contract is separate and independent from the duties
established by the contract itself.”  Formosa Plastics Corp. USA v. Presidio Eng’rs and
Contractors, Inc., 960 S.W.2d 41, 46 (Tex.
1998).  “Accordingly, tort damages are
recoverable for a fraudulent inducement claim irrespective of whether the
fraudulent representations are later subsumed in a contract.”  Id. at
47.  Thus, we find extrinsic evidence was
admissible to show whether DRC was fraudulently induced to enter into and
continue performance under the contract.

            A fraud cause of action requires “‘a
material misrepresentation, which was false, and which was either known to be
false when made or was asserted without knowledge of its truth, which was
intended to be acted upon, which was relied upon, and which caused
injury.’”  Formosa Plastics, 960 S.W.2d at 47 (quoting Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994)); see also Marburger,
957 S.W.2d at 86.  Because each of these
elements must be established in order for there to be recovery, the absence of
any element is grounds for summary judgment. 
Formosa Plastics, 960 S.W.2d at 47–48.

            In its response to VM’s second motion for summary judgment, DRC presented
evidence in the form of letters and memoranda originating from VM both before
and after the date of the contract, and addressed to DRC and third parties,
stating that DRC was to become “the source of supply” for the parts at issue,
and that “all . . . spare parts requirements ha[d] to be channelled
[sic] . . . through DRC . . . for
spares related to VM engines of non-current production.”  This evidence was buttressed by the affidavit
testimony of an employee of a third-party retailer of VM products, and by DRC’s president, Dale Chambliss (“Chambliss”).  Further, Chambliss testified that VM
represented to him the term “non-exclusive” was employed in the contract only
to preclude VM from being in breach of the contract when it sold common parts
to others, that he relied upon this representation, and that DRC was injured
when VM later advanced its current interpretation of the term.  We conclude, therefore, that DRC adduced
sufficient evidence to raise a fact issue as to whether VM intended to comply
with the representations when made, and thus whether DRC was fraudulently
induced into both signing the contract and continuing performance thereunder.

            Finally, we note that the contract’s
merger clause does not negate the element of reliance as to DRC’s
claim it was fraudulently induced to enter into the agreement.  “[A] release that clearly expresses the
parties’ intent to waive fraudulent inducement claims, or one that disclaims
reliance on representations about specific matters in dispute, can preclude a
claim of fraudulent inducement.”  Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171, 181 (Tex. 1997)
(emphasizing that “a disclaimer of reliance or merger clause will not always
bar a fraudulent inducement claim”).  In
the instant case, however, the clause provides only:

The present
agreement substitutes and invalidates any other former agreement.

Despite
the fact that both DRC and VM were “knowledgeable and sophisticated business
players,” this brief clause neither clearly expresses an intent to waive claims
of fraud in the inducement, nor disclaims reliance on representations about the
meaning of the term “non-exclusive” as used in the contract.  Id. at
180.  Thus, “having considered the
‘nature of the transaction and the totality of the circumstances surrounding
the agreement,’” we find this language does not preclude DRC’s
reliance on any alleged misrepresentations by VM.  The
Woodlands Land Dev. Co., L.P. v. Jenkins, 48 S.W.3d 415, 422 (Tex.
App.—Beaumont 2001, no pet.) (quoting Prudential
Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 162 (Tex. 1995)).

            Accordingly, we affirm the judgment
of the trial court as to DRC’s breach of contract
claim, reverse the judgment of the trial court as to DRC’s
fraud claim, and remand to the trial court for further proceedings consistent
with this opinion.

 

                                                                                    

                                                                        /s/        J. Harvey Hudson

                                                                                    Justice

 

 

Judgment
rendered and Majority and Dissenting Opinions filed October 17, 2002.

Panel
consists of Justices Hudson, Fowler, and Edelman (Edelman, J. dissenting).

Publish — Tex. R. App. P. 47.3(b).

 class=Section3>



Affirmed in Part, Reversed and Remanded in Part, and Majority and
Dissenting  Opinions filed October 17, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-00507-CV

_______________

 

DRC PARTS
& ACCESSORIES, L.L.C., Appellant

 

V.

 

VM MOTORI,
S.P.A., Appellee

____________________________________________________

 

On Appeal from
the 151st District Court

Harris County, Texas

Trial Court
Cause No. 98-24396

____________________________________________________

 

D I S S E N T I N G   O P I
N I O N

 

            I agree with the majority opinion
except as to sustaining DRC’s second point of error
on the ground that DRC raised a fact issue on its alternative claim for
fraudulent inducement.  As correctly
noted in the majority opinion, the contract expressly and unambiguously granted
DRC only a non-exclusive right to sell VM’s engine
parts.  As the majority opinion further
reflects, DRC’s fraud claim asserts that DRC was
induced to enter into this contract in reliance on a misrepresentation that DRC
would nevertheless have an exclusive right to sell some of VM’s
parts, in direct and obvious contradiction of the plain terms of the contract
DRC executed.  VM moved for summary
judgment against this fraud claim, among other things, on the ground that DRC
could not have relied upon VM’s alleged
misrepresentation as a matter of law because it contradicted the clear terms of
the contract.

            One of the elements of a fraud claim
is that the plaintiff actually and
justifiably relied on the misrepresentation and thereby suffered
injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Restatement (Second) of Torts § 537
(1977).  In this regard, a party to an
arm’s length transaction must exercise ordinary care and reasonable diligence
for the protection of his own interests, and a failure to do so is not excused
by mere confidence in the honesty and integrity of the other party.  Thigpen
v. Locke, 363 S.W.2d 247, 251 (Tex.
1962).  Therefore, in the absence of
trickery or deceit, reliance on a misrepresentation that directly contradicts
the express terms of a written agreement is not justified and cannot support a
claim for fraud in the inducement.  See Town N. Nat’l Bank v. Broaddus, 569
S.W.2d 489, 493-94 (Tex. 1978).

            This principle is supported by
practical as well as conceptual considerations. 
If a party could enter into a written contract while relying on a
representation that directly contradicts a material term of the contract, then,
in effect, that party is itself entering into the contract with an intent not
to perform it.  Consequently, in order to
show reliance on the misrepresentation, that party would essentially be proving
that it was guilty of fraudulent inducement as well.  As between two such ostensible fraudulently
inducing parties, why would the law favor the one which has withheld its intent
from the contract over the other, which has at least revealed its intent in the
contract?  

            If, as the majority holds, a claim
for fraudulent inducement can lie where the alleged misrepresentation directly
contradicts the written contract, then the contract ceases to establish the rights
and obligations of the parties and instead merely provides a mechanism to hold
a party liable for complying with it as well as not complying with it.  Under those circumstances, what is the use of
entering into written contracts at all, or for that matter, providing courts
for the purpose of not enforcing, and thereby defeating, them?  Because I agree with VM that DRC could not,
as a matter of law, have justifiably relied on the alleged misrepresentation
that directly contradicted the express terms of the contract, I would overrule DRC’s second point of error and affirm the judgment of the
trial court as to DRC’s fraud claim as well as its
contract claim.

 

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed October 17, 2002.

Panel
consists of Justices Hudson, Fowler, and Edelman.

Publish — Tex. R. App. P. 47.3(b).

 











            [1]  DRC also sued DDC and another distributor of
VM products, Stewart and Stevenson Services, Inc. (“Stewart”), alleging they tortiously interfered with the contract.  Summary judgment was granted for DDC and
Stewart, and DRC does not now challenge the merits of that decision.





            [2]  The trial court later severed VM’s counterclaim from those we are here concerned with,
i.e., DRC’s claims against VM.  





            [3]  In its second motion for summary judgment, VM
incorporated by reference all arguments advanced  in its first motion for summary
judgment.  Accordingly, VM moved for
traditional summary judgment as to all of DRC’s
claims, and, in addition, for no-evidence summary judgment as to the breach of
contract claim.





            [4]  The Texas Supreme Court has acknowledged, “A
review of the Texas cases on
the question reveals conflicting decisions and indicates a resulting confusion
which can hardly be resolved or explained away with nice distinctions.”  Dallas Farm Mach. Co. v. Reaves, 307
S.W.2d 233, 234 (Tex. 1957).