Donald R. FARR, Appellant,

v.

SUN WORLD SAVINGS ASSOCIATION
n/k/a Sun World Savings,
F.S.B., Appellee.

No. 08–90–00062–CV.

Court of Appeals of Texas,
El Paso.

May 22, 1991.

Ronald Calhoun, Calhoun & Villa, El Paso, for appellant.

Eliot G. Shapleigh and J. Morgan Broaddus, III, Peticolas, Broaddus & Shapleigh, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a suit on a promissory note signed by a principal shareholder on behalf of his corporation, following a trial to the court, judgment was rendered in favor of the obligee against the shareholder in his individual capacity, the trial court concluding that the corporate entity could be disregarded because the shareholder had used the corporation "to perpetrate a sham" upon the obligee, he had used the corporation as his alter ego during the time in question and he had engaged in actual fraud. We affirm.

Farr Mortgage Company (Farr Mortgage) is a mortgage lending company. Although this case arose out of a short term loan transaction that took place initially in

May 1988, it is necessary to go back to August 1987. At that time because of some unexplained difficulties, a number of shareholders of Farr Mortgage were bought out by Donald Farr (Farr), Appellant, and the remaining shareholders. From that point on, Farr held slightly less than 44 percent of the stock, served as chief executive officer and ran the business on a daily basis. There was evidence that during the period September 1987 to October 1988, corporate formalities were not maintained. In response to subpoena, Farr was unable to produce any corporate minutes, resolutions, notices to directors or shareholders or records of any meetings. There was also evidence that the bylaws were violated by failure to maintain the requisite minimum number of directors.

On April 29, 1988, Farr Mortgage took a $135,000.00 note from Ruben J. and Sandra L. Mata and Guadalupe H. Acuna (Mata note), secured by a lien against the Matas' new house. Because of its own credit limitations and pressure by the developer's lender to be paid immediately for the house, Farr Mortgage needed to get short term financing or warehousing of the note until the note could be sold.

Farr arranged for a loan of $133,650.00 from Sun World Savings Association (Sun World), Appellee, with the Mata note being endorsed to Sun World as collateral security. Unknown to Sun World, Farr Mortgage was at the time out-of-trust at two other banks, i.e., it had failed to make required payments on obligations at the two banks. On May 13, 1988, Farr tendered the Mata note to Sun World and executed a promissory note to Sun World with a maturity date of August 11. The accompanying security agreement, signed by Farr as chairman, promised that prior to any sale of such collateral, Farr Mortgage would obtain Sun World's written consent. Shortly thereafter, Farr negotiated a sale of the Mata note to the Federal National Mortgage Association (Fannie Mae). On May 17, Farr sent a runner to Sun World to physically retrieve the Mata note for inclusion in the Fannie Mae closing package. After a telephone call between Farr and an employee of Sun World, the collateral was released upon the runner's execution of a trust receipt. The receipt reflected that title to the note remained in Sun World and that only physical possession was being relinquished to facilitate any sale of the collateral and discharge of the underlying note obligation to Sun World. As a qualified relinquishment of possession "in trust", the receipt required either payment of the underlying Sun World note or return of the collateral by May 23, 1988. Without obtaining Sun World's required written consent or approval, Farr canceled the endorsement to Sun World on the note and delivered the note to Fannie Mae. Instead of immediately tendering the proceeds to Sun World, Farr deposited the funds in one of Farr Mortgage's general accounts at Coronado Bank. The funds were generally expended against other debts of Farr Mortgage but included payments on Farr's personal bank loans which had been made to him for the purpose of purchasing Farr Mortgage stock from other shareholders.

Disregarding the May 23 obligation date imposed by the trust receipt, Farr testified that he "intended" to discharge the note obligation prior to the August 11 maturity date utilizing proceeds from other transactions. The anticipated intervening income to Farr Mortgage was inadequate to do so. Alerted by letter as to the company's out-of-trust status, the shareholders met, refused to ratify Farr's actions, suspended his authority to act on behalf of the company and required him to sign a personal note to Farr Mortgage for $47,761.00 to cover the amount of corporate funds used to pay Farr's personal loans for stock purchases. Sun World brought suit against Farr Mortgage and Farr, individually. The suit against the company was reduced to a summary judgment for the principal and interest on the note, as well as attorney's fees. The severed action against Farr went to trial without a jury. Judgment was entered against Farr on the basis of actual fraud for actual damages of $130,990.96, exemplary damages of $35,000.00 and attorney's fees.

Point of Error No. One contends that the lower court erroneously applied the princi-

ples of alter ego and constructive fraud enunciated in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex.1986) in order to disregard the corporate entity and hold Farr personally liable. Point of Error No. Two asserts that the court also erred in piercing the corporate veil on the basis of failure to observe corporate formalities under *Castleberry*. Farr contends that the case was governed not by *Castleberry*, but by the law in effect at the time of trial, i.e., the most recent amendment to Tex.Bus. Corp.Act Ann. art. 2.21 (Vernon Supp. 1991), effective August 28, 1989. Farr argues that the statutory amendment retroactively applies to the 1988 incidents involved in this suit *and* that the amendment eliminates the individual liability which would have obtained under *Castleberry* given the evidence presented.

In *Castleberry*, the Supreme Court held that a complaining party need show only constructive fraud in order to prove that a corporation had been used as a sham to perpetrate a fraud, thus establishing the liability of the individual so using the corporation. The Court repeated the distinction between actual and constructive fraud it had made earlier in *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964):

> Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests.

Largely because of the uproar in the business community over the ramifications of *Castleberry* on stockholder liability, the 71st Texas Legislature amended Article 2.21A, effective August 28, 1989, to read in relevant part as follows:

> A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted shall be under no obligation to the corporation or to its obligees with respect to:

> . . . . .

> (2) [A]ny contractual obligation of the corporation on the basis of actual or constructive fraud, or a sham to perpetrate a fraud, unless the obligee demonstrates that the holder, owner, or subscriber caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, or subscriber; or

> (3) [A]ny contractual obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including without limitation: (a) the failure to comply with any requirement of this Act or of the articles of incorporation or bylaws of the corporation; or (b) the failure to observe any requirement prescribed by this Act or by the articles of incorporation or bylaws for acts to be taken by the corporation, its board of directors, or its shareholders.

As can readily be seen, the amendments to Article 2.21A effectively eliminated constructive fraud and the failure to observe corporate formalities and requirements as vehicles for establishing shareholder liability for acts of the corporation in connection with contract claims, but left untouched the effect of constructive fraud on tort claims. Carefully preserved, however, is the right of a person to go behind the corporate entity in order to establish individual shareholder liability by a showing of actual or common law fraud. Where actual fraud primarily for the benefit of the perpetrating shareholder or shareholders can be shown, the various doctrines for disregarding the corporate entity, including alter ego and a sham to perpetrate a fraud, are still very much alive.

■ The question arises as to whether Article 2.21, which became effective August 28, 1989, should apply retroactively to a fact situation and cause of action that arose before that date. Although Sun World argues that Article 2.21 was not intended by the legislature to apply retroactively to fact situations occurring before its effective date and thus should be decid-

ed under *Castleberry*, we conclude to the contrary. Remedial legislation, which does not entirely eliminate a preexisting remedy, applies retroactively from the effective date of the statute and does not constitute an infringement on vested rights. *Pratt v. Story*, 530 S.W.2d 325 (Tex.Civ.App.—Tyler 1975, no writ). 12 Tex.Jur.3d, Constitutional Law § 184, at 790 (1981). The various doctrines for piercing the corporate veil do not create substantive causes of action. They are purely remedial, expanding the scope of potential sources of relief by allowing an otherwise corporate liability to extend to individual shareholders. *Gulf Reduction Corporation v. Boyles Galvanizing & Plating Company*, 456 S.W.2d 476 (Tex.Civ.App.—Fort Worth 1970, no writ).

■ While the first two points of error are couched in terms of the incorrect application of the law, each point multifariously presents challenges to the legal sufficiency of the evidence to impose individual liability upon Farr under Article 2.21A(2) and (3) as well. When considering legal sufficiency or "no evidence" challenges, this Court must restrict its consideration to only that evidence tending to support the judgment, viewing it in a light most favorable to the judgment, giving effect to all reasonable inferences therefrom and disregarding all evidence to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If such review discloses more than a scintilla of evidence in support of the judgment, then the appellate challenge must be overruled. *Stedman v. Georgetown Savings and Loan Association*, 595 S.W.2d 486 (Tex.1979).

■ The ultimate questions are whether Farr, as a principal shareholder, used his corporation for the purpose of perpetrating a fraud and whether the actual fraud was intended to provide a direct personal benefit to him. The judgment, which incorporates findings of fact and conclusions of law, answers these questions affirmatively. While the judgment does base the disregard of the corporate entity in part upon "alter ego," that finding seems to relate more to the direct personal benefit element than as a separate basis for corporate disregard and individual liability.

With regard to a fraudulent intent and action, the evidence reflects:

(1) At the time of executing this agreement with Sun World, Farr Mortgage was out-of-trust at two other El Paso banks;

(2) Farr Mortgage was continuing to service Fannie Mae transactions despite not having the required net worth of $250,000.00;

(3) Farr did not comply with either the trust receipt or the security agreement with regard to the provisions which would have assured payment to Sun World;

(4) Farr canceled the endorsement to Sun World on the Mata note, an action not sanctioned by Tex.Bus. & Com. Code Ann. § 3.208 (Vernon 1968) since Farr Mortgage did not reacquire title and merely held the note in trust;

(5) Farr's cancellation of the endorsement enabled him to make unfettered use of the proceeds from the Fannie Mae transaction;

(6) The proceeds from the sale to Fannie Mae were placed in Farr Mortgage's general account and were used to pay obligations other than the Sun World note, including some of Farr's personal obligations;

(7) Farr knew from the outset that the foregoing would take place since they were "running behind"; individual transactions were not kept separate; the proceeds from the Sun World transaction would not be used to satisfy the Sun World note as required by the security agreement signed by Farr and the trust receipt signed by his agent; instead it was hoped that later sales would generate further income prior to the ultimate maturity date of the Sun World note.

The foregoing factors must be assessed against the backdrop of the inner workings of Farr Mortgage between September 1987 and October 1988, as shown by the evidence recited in this opinion and found by the court. The lack of corporate formali-

ties and the absence of oversight by other directors or shareholders enabled Farr to handle the company financial affairs as he saw fit. By his own testimony, as well as that of Clare Walker, an original shareholder, board member and later chairman, Farr used company funds for his own personal benefit when he paid on his personal stock purchase loans. This supports the lower court's finding of alter ego between August 1987 and September 1988, and supplies the direct personal benefit element of shareholder liability under Article 2.21A(2) of the Business Corporation Act. Points of Error Nos. One and Two are overruled.

█ Point of Error No. Three complains of the lower court's failure to file separate findings of fact and conclusions of law, as requested under Tex.R.Civ.P. 296 and 297. Inclusion of the court's findings of fact and conclusions of law as recitals in the judgment, as opposed to a separate document, is acceptable under these rules. *Lee v. Uvalde County,* 616 S.W.2d 367 (Tex.Civ. App.—Tyler 1981, no writ); *Peterson v. Peterson,* 595 S.W.2d 889 (Tex.Civ.App.— Austin 1980, writ dism'd); *Cottle v. Knapper,* 571 S.W.2d 59 (Tex.Civ.App.—Tyler 1978, no writ); *Wallis v. Liberty Mutual Insurance Company,* 465 S.W.2d 422 (Tex. Civ.App.—Dallas 1971, writ ref'd n.r.e.). Here the recitals are sufficient to identify the basis for decision and support the judgment in light of the pleadings, evidence and statutory elements of recovery. They were sufficient to allow Farr to make a proper presentation of his case to the appellate court. Point of Error No. Three is overruled.

Judgment of the trial court is affirmed.