In The
Court of Appeals
For The
First District of Texas
__________________________

NO. 01-00-00113-CV
_________________________

JAMES RUTHERFORD, Appellant

V.

RONALD AND DANA ATWOOD, Appellees

* * *

RONALD AND DANA ATWOOD, Appellants

V.

JAMES RUTHERFORD, Appellee




On Appeal from the County Civil Court at Law Number 2
Harris County, Texas
Trial Court Cause No. 681,538






MEMORANDUM OPINION

          James Rutherford, the individual defendant, and Ronald and Dana Atwood
(“the Atwoods”), the plaintiffs, both appeal the plaintiff’s judgment for damages and
attorney’s fees arising from an uncompleted home restoration and remodeling job. 
The trial court entered a joint and several liability judgment against Rutherford,
individually, and Triad Home Renovators, Inc. (“Triad”), in favor of the Atwoods
upon jury findings of fraud, DTPA violations, and negligence. Rutherford, Triad’s
sole officer, director, and stockholder, appeals the judgment against himself,
individually. The Atwoods appeal the trial court’s refusal to enter judgment for all
the damages awarded them in answers to jury questions. We reverse in part, affirm
in part, and remand to the trial court.
BACKGROUND
          On May 22, 1995, the Atwoods’ home was rendered uninhabitable by a fire. 
The next morning, Keith Boeman


 and Dale Pond approached the Atwoods,
introduced themselves as representatives of Triad, made a remodeling contract
proposal, and convinced the Atwoods to hire Triad to restore their damaged home. 
Triad was a residential and commercial construction business, and a majority of its
work at that time was fire restoration.
          Boeman and Pond represented to the Atwoods that Triad’s payment would
come entirely from the Atwoods insurance proceeds; that the Atwoods would have
no out-of-pocket expenses; and that Triad would receive payment in three equal
installments—at the start of the project, during the reconstruction of the home, and
when the project was complete. Boeman also represented that Triad’s payments
would be made by draws from an escrow account that would be created for the
Atwoods’ insurance proceeds


 at the Atwoods’ mortgage company. The Atwoods
signed the contract, and Boeman and Pond signed for Triad. The Atwoods and their
insurance company came to an agreement that the Atwoods would receive about
$84,000.


 Because the Atwoods’ home was subject to a mortgage lien held by
NationsBank Mortgage Corporation (“NationsBank Mortgage”), the Atwoods’
insurance carrier made the insurance proceeds payable to both Ronald Atwood and
NationsBank Mortgage.
          The insurance carrier issued four checks at intervals; each was endorsed by
Ronald Atwood and Kenneth Scudder, a NationsBank officer acting for its wholly-owned subsidiary, NationsBank Mortgage. Because of an agreement between
NationsBank and its subsidiary, Scudder was authorized as a bank officer to endorse
the mortgage company’s checks. After Atwood and Scudder endorsed the insurance
checks, Scudder authorized their deposit directly into Triad’s business account. No
escrow account was ever established for the Atwoods’ insurance proceeds. Ronald
Atwood testified that when he endorsed each check, he relied upon Boeman’s
representation that the funds were going into a NationsBank Mortgage escrow
account, and that he would not have endorsed the checks if he had known they were
being deposited directly into Triad’s account.
          Initially, the Atwoods were pleased with the progress of the reconstruction. 
This included additional, non-insurance funded work on a sun-room addition and an
extension to the house, which the Atwoods requested and negotiated directly with
Rutherford, and for which they paid Triad $14,500 of their own funds up front. 
However, by October 1995, work had come to a stand-still. At one point during the
work delay, Rutherford explained to the Atwoods that he was waiting for a check
from the mortgage company’s escrow account in order to purchase brick. In
December 1995, Dana Atwood, frustrated by the delays and slow progress,
telephoned NationsBank Mortgage and learned that no escrow account existed. 
When she confronted Rutherford about it, he told her that NationsBank Mortgage had
failed to set up the escrow account, and that Triad had run out of money and could not
finish the Atwoods’ house. 
          In December 1995, after terminating Triad, the Atwoods used their own funds
to hire workmen and purchase materials and fixtures to make the unfinished house
minimally habitable. The Atwoods were forced to move back into their unfinished
house at the beginning of 1996, when their insurance carrier’s housing allowance to
them was exhausted. Without funds to hire a new contractor, they were unable to
finish the renovation, and the entire $21,000 of the insurance depreciation hold-back
was forfeited because the work was not completed in the allotted time. 
          The Atwoods sued Triad, Rutherford individually, and NationsBank. 
NationsBank obtained a take-nothing summary judgment and is not a party to this
appeal. The Atwoods proceeded to jury trial against Triad and Rutherford. The jury
answered questions finding that both Rutherford and Triad: (1) committed fraud
against the Atwoods (Question One); (2) engaged in DTPA violations that were a
producing cause of damages to the Atwoods (Questions Six and Seven); (3) did so
knowingly (Question Nine); and (4) negligently and proximately caused damages to
the Atwoods (Questions 10 and 11). The jury awarded the Atwoods attorney’s fees
of $45,333 for the trial, $15,000 in the event of appeal to the court of appeals, and
$15,000 in the event of appeal to the Texas Supreme Court (Question 15). Lastly, the
jury found that Rutherford was responsible for Triad’s conduct. (Question 16).
          Rutherford urges three issues on appeal; Triad, in bankruptcy, does not appeal. 
The Atwoods assert a single issue on their appeal.
I.       RUTHERFORD’S APPEAL — ANALYSIS 
          A. Sufficiency of the Evidence 
          In his first issue, Rutherford asserts the trial court erred in entering a judgment
against him in his individual capacity, because the evidence was legally and factually
insufficient to support the jury’s answers finding him responsible for Triad’s conduct
and individually liable for fraud, DTPA violation, and negligence.
          In deciding legal sufficiency points, we consider only the evidence tending to
support the finding of fact and disregard all evidence and inferences to the contrary. 
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 232 (Tex. 1990). When we review
factual sufficiency points, we weigh all the evidence and set aside the jury’s verdict
only if it is so against the great weight and preponderance of the evidence as to be
clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). When
both legal and factual sufficiency points are raised, we must first examine the legal
sufficiency point. Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981).1. Piercing the Corporate Veil
          The jury’s answer to question 16 found that Rutherford was responsible for
Triad’s conduct. Question 16 reads, in pertinent part:
Is Rutherford responsible for the conduct of Triad?
In deciding whether there was such unity between Triad
and Rutherford that the separateness of Triad had ceased,
you are to consider the total dealings of Triad and
Rutherford, including:
 
1.the degree to which Triad’s property had been
kept separate from that of Rutherford;
2.the amount of financial interest, ownership,
and control Rutherford maintained over Triad;
and 
3.whether Triad had been used for the personal
purposes of Rutherford, or that Rutherford
used Triad for the purpose of perpetrating and
did perpetrate an actual fraud on the Atwoods
primarily for the direct personal benefit of
Rutherford.
 
In deciding whether Rutherford caused Triad to be used for
the purpose of perpetrating a fraud on the Atwoods for his
direct personal benefit, you must find that Rutherford
committed the fraud in relation to the damages that Triad
caused to the Atwoods and that Rutherford directly
benefitted from these fraudulent acts.
 
          Article 2.21A(2) of the Business Corporation Act,


 concerning liability of
shareholders with respect to a corporation’s obligations, places severe restrictions on
a claimant/obligee’s ability to pierce corporate protection of stockholders. Article
2.21(A)(2) reads in pertinent part:
          A.      A holder of shares. . . of the corporation shall be under no obligation to
the corporation or its obligees with respect to:                             
 
* * *
(2)any contractual obligation of the corporation . . . on
the basis that the holder . . . is or was the alter ego of
the corporation, or on the basis of actual fraud or
constructive fraud, a sham to perpetrate a fraud, or
other similar theory, unless the obligee demonstrates
that the [share] holder . . . caused the corporation to
be used for the purpose of perpetrating and did
perpetrate an actual fraud on the obligee primarily
for the direct personal benefit of the [share] holder.
. . .
          Under the jury charge given, the Atwoods were required to prove that
Rutherford: (1) caused Triad to be used for the purpose of perpetrating an actual fraud
on them; (2) did perpetrate an actual fraud on them; and (3) did so primarily for his
own direct personal benefit.
Was Rutherford’s conduct “primarily for [his own] direct personal benefit”?
          Rutherford asserts that, assuming arguendo his personal conduct constituted
actual fraud on the Atwoods, article 2.21(A)(2) shields him as a corporate shareholder
because the evidence does not show that such fraud was perpetrated “primarily for the
direct personal benefit of the [share]holder,” Rutherford. We agree.
          Boeman, testifying for the Atwoods, stated that at the time he obtained the
Atwood contract for Triad, Triad was working on 18 other renovation/remodeling
contracts, using four or five superintendents. Evidence undisputedly showed that
Rutherford was the only person with authority to issue checks for Triad; that he took
no regular draw; that he drew money from Triad’s corporate bank account when he 
needed it for personal matters such as car payments, his personal home mortgage, or
investments; and that he issued corporate checks to his wife, although she rendered
no services to Triad. 
          The Atwoods urge that Rutherford’s draws for his own personal and family use
constitute the sort of fraud for his direct personal benefit that article 2.21(A)(2)
proscribes.
          Menetti v. Chavers was a suit by homeowners for faulty repairs against an
incorporated home repair company and the husband and wife who were the
corporation’s sole shareholders. 974 S.W.2d 168 (Tex. App.—San Antonio 1998, no
pet.). The court of appeals found, as a matter of law, that the alleged
misrepresentations to the homeowners that were the basis of the suit were not false,
and were, therefore, insufficient to support a finding of actual fraud necessary to
pierce the corporate veil. Id. at 174-75. Although dicta to its decision, Menetti states
the rule as to the required direct personal benefit:
“Evidence that the Menettis bought their groceries or paid their credit
card bills from the corporate account is insufficient [to show that they
personally benefitted from any misrepresentations], because the fraud
must relate to the transaction at issue, the contract between the Menettis
and the Chavers.” 

Id. at 175. (Emphasis added.)
          By contrast with Menetti and the case before us, Farr v. Sun World Sav. Ass’n,
810 S.W.2d 294 (Tex. App.—El Paso 1991, no pet.), illustrates the required fraud that
“must relate to the transaction at issue.” Farr, a mortgage company’s principal
shareholder and president, fraudulently retained a pledged promissory note from
SunWorld, the secured party, promising to return or repay the note in full within an
agreed time. Id. at 295. Farr sold the note and deposited the proceeds into his
mortgage company’s general account. Instead of paying off the note, Farr applied the
proceeds to the corporation’s and his own indebtedness. Id. The El Paso Court of
Appeals held:
Farr used company funds for his own personal benefit
when he paid on his personal stock purchase loans. This
supports the lower court’s finding of alter ego. . . , and
supplies the direct personal benefit element of shareholder
liability under Article 2.21(A)(2).

Id. at 298.

          The misused funds related to the transaction at issue because Farr’s agreement
with SunWorld was that the proceeds from the sale of the note, if it was sold rather
than returned, would be paid to SunWorld. In the case before us, there is no evidence
Rutherford’s personal draws related to the contract between Triad and the Atwoods.
          Further, no evidence traces or times Rutherford’s draws to the Atwood deposits
to show that the Atwood funds were used primarily for Rutherford’s direct personal
benefit. Triad essentially used the overdraft mechanism as a line of credit at
NationsBank. Rutherford’s use of the Atwood funds allowed Triad to pay personnel
and suppliers on other jobs, to offset overdrafts on Triad’s NationsBank account, and
to continue to do business on other jobs until NationsBank fired Scudder and “froze”
Triad’s and Rutherford’s accounts.
          The evidence fails to show that Rutherford’s draws from Triad’s account either
(1) related to the transaction at issue, i.e., the remodeling contract between Triad and
the Atwoods, or (2) were primarily for Rutherford’s direct personal benefit. The
evidence is, therefore, legally insufficient to pierce the corporate veil and make
Rutherford responsible for Triad’s conduct, as the jury found in its answer to
Question 16. Accordingly, we sustain that portion of Rutherford’s first issue
complaining that the court erred in entering a judgment against him jointly and
severally with Triad.2. Rutherford’s individual liability
          Rutherford next urges in his first issue that there is no legally or factually
sufficient evidence to support the jury answers to questions regarding his individual 
liability for fraud, DTPA violations, and negligence.
                              (a) Fraud
          The jury found in answer to Question One that Rutherford committed fraud
against the Atwoods. Question One defined “fraud” to the jury as follows:
Fraud occurs when —
a.A party makes a material misrepresentation,
b.the misrepresentation is made with knowledge of its falsity or
made recklessly without any knowledge of the truth and as a
positive assertion,
c.the misrepresentation is made with the intention that it should be
acted on by the other party, and 
d.the other party acts in reliance on the misrepresentation and
thereby suffers injury.
 
“Misrepresentation” means:
 
a.A false statement of fact, or,
b.A promise of future performance made with an intent not to
perform as promised, or,
c.A statement of opinion based on a false statement of fact, or and 
d.An expression of opinion that is false, made by one claiming or
implying to have special knowledge of the subject matter of the
opinion.
 
“Special knowledge” means knowledge or information superior to that
possessed by the other party and to which the other party did not have
equal access.

Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998).
          All of the representations made to and relied upon by the Atwoods concerning
the creation of an escrow account were spoken by Boeman. However, Boeman
testified that he made the representations at Rutherford’s direction.
          To prove an action for common-law fraud, or fraudulent misrepresentation, a
plaintiff must prove that the defendant made a false representation either directly or
indirectly. Neuhaus v. Kain, 557 S.W.2d 125, 138 (Tex. App.—Corpus Christi 1977,
writ ref’d). A defendant commits fraud indirectly when he makes a false
representation to a third party with the intent that it be repeated to deceive the
plaintiff. Atl. Richfield Co. v. Misty Products, Inc., 820 S.W.2d 414, 418 (Tex.
App.—Houston [14th Dist.] 1991, writ denied); O’Connor’s Texas Causes of Action
(2001-02) Fraud—Common-Law Fraud, pp. 189-91.
          Boeman testified that, although he had no specific conversation with
Rutherford about the Atwood contract before he went to Atwood’s home to solicit the
contract, Rutherford had told him earlier to tell every prospective customer that
insurance proceeds would go directly into a mortgage company escrow account. 
Boeman was present when Rutherford met with the Atwoods at their home in
December 1995, and heard Rutherford tell them that the failure to establish an escrow
account was a mistake on NationsBank part, and that the insurance checks should
have been deposited into an escrow account. Boeman testified that Rutherford’s
statement was false; that Rutherford knew that the Atwood insurance funds had gone
directly into Triad’s account; and that Rutherford had Triad’s and his other banking
accounts on a computer program and was able to check them in his office daily.
          Ron Scudder, the former NationsBank vice-president and loan officer who
handled all of Rutherford’s accounts, including Triad, testified that NationsBank
Mortgage never had in place any type of escrow accounts to receive insurance funds
to be paid out, and that he never discussed with Rutherford setting up escrow
accounts for the Atwood job or Triad’s one other job involving NationsBank
Mortgage. Scudder testified that he was familiar with the insurance payments made
to NationsBank Mortgage and the Atwoods; that Rutherford brought the matter to his
attention; that he, Scudder, agreed to endorse those checks as part of NationsBank’s
relationship with its wholly-owned subsidiary, NationsBank Mortgage; and that after
his endorsement, the checks were deposited directly into Triad’s account.
          Thus, we find the evidence is both legally and factually sufficient to support
the jury’s finding in Question One that Rutherford personally committed fraud against
the Atwoods. We overrule the portion of Rutherford’s first issue concerning fraud.
                              (b) DTPA
          Rutherford next complains that there is no evidence or factually insufficient
evidence to support the jury’s findings that Rutherford, individually, engaged in a
deceptive trade practice. Jury questions Six, Seven, and Nine read as follows:
Question 6
 
Did Triad or Rutherford engage in any false, misleading, or
deceptive act or practice that was a producing cause of
damages to the Atwoods?

                    . . . .
 
“False, misleading, or deceptive act or practice” means any
of the following:
 
                    a.       Representing that goods or services had or
would have characteristics that they did not
have, or
 
                    b.       Representing that goods or services are or
will be of a particular quality if they were of
another, or
 
                    c.       Representing that an agreement confers or
involves rights that it did not have or involve,
or
 
                    d.       Failing to disclose information about goods or
services that was known at the time the
transaction with the intent to induce the
Atwoods into a transaction they otherwise
would not have entered into if the information
had been disclosed.

Question 7
 
Did Triad or Rutherford engage in any unconscionable
action or court of action that was the producing cause of
damages to the Atwoods?

                    . . . .
 
An unconscionable action or course of action is an act or
practice that, to a person’s detriment, takes advantage of
the lack of knowledge, ability, experience, or capacity of a
person to an unfair degree.

Question 9
 
Did Rutherford or Triad engage in any such conduct
knowingly?

          Corporate agents and directors can be held individually liable for their own acts
that violate the DTPA. Weitzel v. Barnes, 691 S.W.2d 598, 601 (Tex. 1985) (finding
corporate officers liable under DTPA in their individual capacities for their own
misrepresentations even though they acted on behalf of corporation); Barclay v.
Johnson, 686 S.W.2d 334, 338 (Tex. App.—Houston [1st Dist.] 1985, no writ)
(holding “‘corporate veil’ does not have to be pierced in order to impose personal
liability upon a corporate officer who knowingly participated in the wrongful
transaction”).
          In addition to the indirect fraudulent representations that the jury found
Rutherford made to the Atwoods through Boeman concerning the escrow account, the
jury could further have found that (1) Rutherford misrepresented that he needed
$1,400 for brick, (2) Rutherford took and deposited a $1,400 personal check for the
brick from the Atwoods, (3) Rutherford never ordered any brick for the Atwoods’
home, (4) Rutherford falsely assured the Atwoods that he had spoken to NationsBank
Mortgage to have it release money from the escrow account, and (5) Rutherford knew
that no escrow account existed. We hold that more than a scintilla of evidence
supports the jury’s answers to questions six, seven, and nine. Rutherford contends
that he made no misrepresentations; however, the jury could have found from the
evidence above that Rutherford did make misrepresentations and took advantage of
the Atwoods by using his knowledge of the non-existence of the escrow account to
his advantage. Moreover, the jury’s answers to questions six, seven, and nine are not
so against the great weight and preponderance of the evidence as to be clearly wrong
and unjust. We overrule that part of Rutherford’s first issue concerning DTPA
violation.
                              (c) Negligence
          Rutherford’s final complaint in his first issue asserts that the evidence is legally
and factually insufficient to show that he was negligent “solely with respect to the
repairs and construction of the house in question,” as inquired about in Question 11. 
We agree.
          The evidence is undisputed that Rutherford did not engage in or supervise any
of the repairs and construction on the house, but hired contract superintendents and
subcontractors. Nothing in the record shows negligence by Rutherford, individually,
rather than by Triad under respondeat superior. We sustain that portion of
Rutherford’s first issue pertaining to the jury finding in Question 11 of negligence by
Rutherford individually.
          In summary, we sustain Rutherford’s first issue complaints as to piercing the
corporate veil and negligence. We overrule Rutherford’s first issue complaints as to
his personal liability for fraud and DTPA violation.
B. Double Recovery
          In his second point of error, Rutherford contends the judgment for $25,000
against him, individually, together with the judgment for $25,000 against Triad,
constitutes a double recovery. We agree.
          Texas law does not allow a plaintiff to recover twice for the same injury. See
Parkway Co. v. Woodruff, 901 S.W.2d 434, 441 (Tex. 1995). The jury awarded the
Atwoods damages in the amount of $25,000 against both Triad and Rutherford, based
on a finding of deceptive trade practice. Because the Atwoods would recover twice
for a single DTPA violation, the $50,000 award constitutes a double recovery. 
Accordingly, we reverse the award for $50,000 and render judgment for $25,000
against Triad and Rutherford, jointly and severally. 
C. Attorney’s Fees 
          In his third point of error, Rutherford argues that the evidence is legally and
factually insufficient to support the award of attorney’s fees. Further, Rutherford
argues that the Atwoods did not properly segregate their attorney’s fees between the
prosecution of their case against Triad and Rutherford, on the one hand, and
NationsBank on the other.
          To recover attorney’s fees under the DTPA, a plaintiff must prove that the fees
were both reasonable and necessary to the case. Tex. Bus. & Comm. Code Ann. §
17.50(d). (Vernon 1998); see Arthur Anderson & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 818-19 (Tex. 1997). Factors to be considered by a fact finder in making
an award of attorney’s fees include:
(1) the time and novelty and labor required, the novelty
and difficulty of the questions involved, and the skill
required to perform the legal service properly;
 
(2)the likelihood . . . that the acceptance of the
particular employment will preclude other
employment by the lawyer;
 
(3)the fee customarily charged in the locality for similar
legal services;
 
                    (4)     the amount involved and the results obtained;
 
(5)the time limitations imposed by the client or by the
circumstances;
 
(6)the nature and length of the professional relationship
with the client;
 
(7)the experience, reputation, and the ability of the
lawyer or lawyers performing the services; and 
 
(8)whether the fee is fixed or contingent on results
obtained.
Id. at 818.
          The Atwoods’ attorney testified that he had practiced law for 15 years, and had
a contingent fee agreement with the Atwoods that allowed him an attorney’s fee of
40% of any recovery awarded them if the case went to trial. He testified that
contingent fee contracts were customary and reasonable in Harris County. He met
with his clients and witnesses, conducted legal research, filed the lawsuit and
subsequent pleadings, and worked on the case with another attorney for 250 hours. 
The total cost in trying the case, apart from attorney’s fees, was $4,000. We find that
there is legally and factually sufficient evidence to support an award of attorney’s
fees. 
          However, Rutherford also complains that attorney’s fees were not properly
segregated between the Atwoods’ case against Triad and himself, on the one hand,
and NationsBank, with its successful summary judgment, on the other. The Atwoods
had the duty to show that attorney’s fees incurred in the prosecution of their claim
against Triad and Rutherford were reasonable and necessary. See Stewart Title Guar.
Co. v. Sterling, 822 S.W.2d 1, 10-11 (Tex. 1991). An exception to the segregation
requirement arises when attorney’s fees are rendered in connection with claims
arising out of the same transaction, or when claims are so interrelated that they
involve essentially the same facts. See id. at 11.  
          The Atwoods’ attorney testified on cross-examination that the claims against
the bank were completely different from the claims against Triad and Rutherford; that
only two depositions were taken in the case against Triad and Rutherford; that an
expert was hired to testify in the case against NationsBank; and that the Atwoods
sought to recover part of the expenses of their case against NationsBank from Triad
and Rutherford. Accordingly, we hold that the trial court erred in awarding the
Atwoods the total and unsegregated $45,333 in attorney’s fees against Rutherford and
Triad, jointly and severally. We sustain Rutherford’s third issue, and we remand to
the trial court for a determination of the amount of attorney’s fees to be awarded the
Atwoods against Rutherford and Triad only. See id. at 12.
II.      THE ATWOOD’S APPEAL - ANALYSIS
          In their sole issue on appeal, the Atwoods contend that the trial court erred in
not entering judgment for all the damages awarded to them by the jury.
          As stated above, Texas law does not allow a plaintiff to recover twice for the
same injury. Parkway Co., 901 S.W.2d at 441. The jury charge on damages read as
follows:
ANSWER SEPARATELY IN DOLLARS AND CENTS,
IF ANY, FOR EACH OF THE FOLLOWING
ELEMENTS OF DAMAGES:
 
A.The difference, if any, between the value of the
home remodeling and repair work agreed to by the
parties and the value of the home remodeling and
repairs actually performed. The difference in value,
if any, shall be determined at the time and place the
home remodeling and repair services were
performed.
 
Answer:$32,159.00
 
B.The reasonable and necessary cost to the Atwoods to
complete the remodeling and repairs to date.
 
Answer:$23,340.00
 
C.Reasonable and necessary expenses incurred in
attempting to have their home repaired.
 
Answer:$12,300.00
The trial court disregarded the jury’s answers to sub-parts B and C, and entered
judgment awarding damages of $32,159 for the repairs on the Atwoods’ home. The
jury’s calculation of damages in sub-part A includes the damages awarded in sub-part
B. An award of $23,340 on top of the jury’s award of $32,159 would amount to a
double recovery. However, the award of $12,300 in sub-part C should not have been
disregarded; it constitutes the out-of-pocket expense the Atwoods would not have
incurred, but for the wrongful acts of Rutherford and Triad. The $12,300 award in
sub-part C was therefore erroneously disregarded. Accordingly, we affirm the trial
court’s judgment disregarding the jury’s $23,340 award in sub-part B; we reverse the
trial court’s judgment disregarding the $12,300 award in sub-part C of the damage
issue. The Atwood’s issue is sustain in part.
CONCLUSION
          The award of $25,000 in damages for deceptive practices against both Triad
and Rutherford is modified and reduced, so that Triad and Rutherford are jointly and
severally liable for $25,000. The case is remanded to the trial court for determination
of fees to be awarded the Atwoods’ attorneys for prosecution of their suit against
Triad and Rutherford only. The Atwoods are awarded the damages of $12,300 in
expenses disregarded in sub-part C of the damages question.
 
 
                                                                                  Lee Duggan, Jr.



                                                                                  Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Duggan.