NO. 07-03-0257-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 3, 2006

______________________________

CHARLES PIERCE BATES AND

BATES KWIK CHANGE, INC., APPELLANTS

V.

WILLIAM F. de TOURNILLON AND

KWIK CHANGE OF WICHITA FALLS, INC., APPELLEES

_________________________________

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2001-591,942; HONORABLE PAULA LANEHART, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL, J.
(footnote: 1)
MEMORANDUM OPINION

Appellants Charles Bates and Bates Kwik Change, Inc., present two issues challenging a judgment in favor of Kwik Change of Wichita Falls, Inc., arising out of breach of a lease agreement.  We reform the trial court’s judgment and affirm.

The facts relevant to this appeal begin with the incorporation of Bates Kwik Change, Inc. (BKC) by Charles Bates (Bates) and his wife Dijon in July 1991.  The Bates were the only officers and shareholders of the corporation.  It was formed for the purpose of operating an automobile maintenance business.  In pursuance of that objective, BKC entered a lease agreement with Kwik Change of Wichita Falls, Inc. (KCWF) effective August 1, 1991, by which KCWF leased three existing oil-change facilities in Wichita Falls to the new corporation.  The lease was signed on behalf of KCWF by its founder and president, William F. de Tournillon, Sr., who is also Dijon Bates’ father,
(footnote: 2) and called for rent of $8,000 per month. As relevant here, the lease also gave KCWF a lien on all “fixtures, chattels, or other property” placed in the premises in the event of a default in rental payments. 

At BKC’s request, KCWF agreed to reductions of the monthly rent.  A lease amendment, effective April 1, 1992 through July 31, 1994, reduced the monthly rent to $6,600.  A second amendment reduced the rent to $5,000 from March 1, 1995 though December 1, 2006.  Charles and Dijon Bates separated in December 1995 and subsequently divorced.  BKC filed a bankruptcy petition in January, 1996.  That proceeding concluded in approval of a plan of reorganization.  In 1998, Charles Bates bought Dijon’s interest in the corporation for $3,000.  BKC continued operation of the business through mid-June 1999.  Its last rental payment to KCWF was for April of that year.  On ceasing operation, Bates and several employees moved equipment and inventory owned by BKC and its suppliers to rented storage facilities.  Bates valued the inventory at $20,000.  He said he notified the vendors (Valvoline and Pennzoil) where their equipment was stored, but did not inform KCWF.  

In July 1999, de Tournillon and his son went to each of the properties to take possession on behalf of KCWF.  They found the equipment and inventory removed and called police to report that property as stolen.  Bates was indicted for theft, but the indictment was quashed after he produced documentation that BKC was entitled to possession of the items. 

de Tournillon and KCWF filed suit against BKC and Bates individually in August 2001, asserting claims for breach of contract, fraud, breach of fiduciary duty, conversion and theft.  The petition alleged BKC was the alter ego of Bates and sought to impose personal liability on him.  Bates and BKC filed a joint answer consisting of a general denial and asserting the defense of limitations to “some or all” of the claims. 

After a bench trial at which de Tournillon, his son Bill de Tournillon Jr., and Bates testified, the court entered judgment for KCWF against BKC for $87,850 and against Bates for $44,005.28.
(footnote: 3)  This appeal followed. 

Appellants’ prayer for relief on appeal asks that we address their first issue, in which they complain of the trial court’s denial of a motion for new trial, only if we overrule their second issue.
(footnote: 4)  Accordingly, we begin with the second, by which appellants challenge the legal and factual sufficiency of the evidence supporting the trial court’s piercing of the corporate veil and imposing of personal liability on Bates.
(footnote: 5)  Finding the evidence legally insufficient, we sustain the issue.

In findings of fact relevant to this issue, the trial court found (1) Bates “looted” the three stores preventing KCWF from reopening, (2) Bates acted with fraudulent intent in removing equipment and inventory in violation of the lease, (3) he “committed actual fraud in removing the equipment to the detriment of Bates Kwik Change and Kwik Change of Wichita Falls, Inc.,” and (4) “as a result of the actual fraud by Charles Bates, Kwik Change of Wichita Falls, Inc. suffered damages in an amount of $44,005.28.”

A legal sufficiency point will be sustained when: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact.  
Merrell Dow Pharm., Inc. v. Havner
, 953 S.W. 2d 706, 711 (Tex. 1997).  More than a scintilla, and thus legally sufficient, evidence of the existence of a vital fact is present when the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the fact's existence.  
Lee Lewis Const.v. Harrison
, 70 S.W.3d 778, 782-83 (Tex. 2001).

Imposition of liability on a corporate shareholder for the contractual obligation of the corporation on an alter ego or similar theory requires proof that the shareholder (1) caused the corporation to be used for the purpose of perpetrating; and (2) did perpetrate an actual fraud on the contractual obligee primarily for the direct personal benefit of the shareholder.  Tex. Bus. Corp. Act Ann. art. 2.21.A(2) (Vernon 2003);
(footnote: 6)  
Harco Energy, Inc. v. Re-Entry People, Inc.
, 23 S.W.3d 389, 393 (Tex.App.–Amarillo 2000, no pet.); 
Menetti v. Chavers
, 974 S.W.2d 168, 173 (Tex.App.–San Antonio 1998, no pet.).  Most cases applying the “actual fraud” standard under article 2.21.A(2) have used a definition of fraud that requires a material misrepresentation.  
See, e.g., Harco Energy
, 23 S.W.3d at 393; 
Huff v. Harrell
, 941 S.W.2d 230 (Tex.App.–Corpus Christi 1996, writ denied), both citing
 T.O. Stanley Boot Co. v. Bank of El Paso
, 847 S.W.2d 218 (Tex. 1993).  The court stated in 
Castleberry v. Branscum
, 721 S.W.2d 270 (Tex. 1986), that actual fraud in the context of piercing the corporate veil “usually involves dishonesty of purpose or intent to deceive.”  
Id.
 at 273; 
Menetti
, 974 S.W.2d at 174.  

Appellees contend the evidence shows that BKC was formed and used to perpetrate a fraud on its creditors including KCWF.  In support of the contention, they first rely on evidence that BKC was undercapitalized.
(footnote: 7)  Bates testified that the corporation’s paid-in capital at the time of its incorporation in 1991 was limited to the statutory minimum $1000.  Mr. de Tournillon testified that Bates could not make the initial $8000 lease payment at the time they entered the lease but had to pay it from the business’s cash flow.  For purposes of disposition of this issue, we assume, arguendo, that the evidence is sufficient to establish that BKC was inadequately capitalized.  Its minimum capitalization in 1991, though, provides no evidence of the corporation’s use to perpetrate a fraud on KCWF in 1999, after some eight years of operation.  

Appellees further contend the evidence cited by the trial court in its findings, concerning Bates’s “looting” of the three stores and removal of equipment and inventory, supports the imposition of personal liability.  Even inferring an intent to deceive from his removal of the equipment and inventory to the storage facility, the evidence fails to meet the requirements of article 2.21.A(2).  The evidence was undisputed that the equipment and inventory Bates removed from the stores was, before its removal, being used by BKC in its business, and that the items were subject to BKC’s lease agreement with KCWF and its agreements with third party suppliers.  Article 2.21.A(2) required appellees to show that the actual fraud perpetrated on KCWF was primarily for Bates’ direct personal benefit. 

We contrast the facts presented here with that in other cases in which courts have considered the “direct personal benefit” requirement.  
Rutherford v. Atwood
, No. 01-00-0113-CV, 2003 WL 22053687 (Tex.App.–Houston [1
st
 Dist.] August 29, 2003, no pet.);  
Farr v. Sun World Sav. Ass’n
, 810 S.W.2d 294 (Tex.App.–El Paso, 1991, no writ).  In 
Farr
, a mortgage company shareholder and president fraudulently obtained proceeds of a pledged promissory note.  The court found the direct personal benefit element of article 2.21.A(2) was met because he used part of the proceeds to pay his personal loans.  810 S.W.2d at 298.  In 
Rutherford
, evidence showed the corporation’s sole shareholder and officer used corporate funds for personal and family uses such as car payments.
(footnote: 8)  Appellees argue the evidence shows Bates converted the equipment and inventory to his own use.  We cannot agree.  The trial court was free to disbelieve Bates’ testimony that he removed the equipment to storage when he decided to close the stores because he wanted to insure it was “returned to the proper people,” but there is no evidence he personally made any use of the items or that his actions were otherwise primarily for his direct personal benefit.  Finding no evidence in the record satisfying the statutory prerequisites of article 2.21.A(2) to the imposition of personal liability on Bates, we must sustain appellants’ second issue.  That holding requires reformation of the trial court’s judgment to delete the award against Bates individually.  As reformed, the judgment of the trial court is affirmed. 

James T. Campbell                                                             Justice 

FOOTNOTES
1: Former Chief Justice Phil Johnson was on the panel that heard oral argument.  He did not participate in the decision.  
Tex. R. App. P.
 41.1(b).  

2: Mr. de Tournillon testified he operated the oil-change businesses since the early 1980's, and that he and his wife eventually incorporated KCWF.  He testified he leased the locations to the Bates’s corporation “trying to turn over an existing business to a son-in-law and a daughter, and they could run it and build a future.” The parties also had a related option agreement, under which BKC could buy the locations if it performed its obligations under the lease.

3: The judgment provided no recovery for Mr. de Tournillon individually.

4: Because we do not reach appellants’ first issue, we omit narration of the facts pertinent to that issue.

5: Appellees did not argue in the trial court, and do not contend here, that Bates has any direct liability independent of that of BKC.

6: The elements necessary to impose personal liability on a shareholder have been carried forward in section 21.223 of the Business Organizations Code.  
See
 Tex. Bus. Org. Code, Act of May 29, 2003, 78
th
 Leg., R.S., ch. 182 §1, 2003 Tex.Gen. Laws 265, 427.  That code became effective January 1, 2006 but the Business Corporation Act continues in effect until January 1, 2010 for corporations formed before January 1, 2006. 

7: 
See
 
Castleberry
, 721 S.W.2d at 272 n. 3 (noting inadequate capitalization as “another basis for disregarding the corporate fiction”).

8: The court nonetheless found the evidence insufficient to satisfy the direct personal benefit requirement because the personal draws were not related to the transaction at issue.  Op. at 4-5.