SPECIALTY RETAILERS, INC., Appellant,

v.

Richard L. FUQUA, Appellee.

No. 14–99–00187–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 25, 2000.

Rehearing Overruled Oct. 12, 2000.

George A. Coats, Gary L. Evans, Houston, for appellants.

Brent N. Whiteley, Richard L. Fuqua, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices FOWLER and WITTIG.

## OPINION

WANDA McKEE FOWLER, Justice.

This is an appeal from the grant of a no-evidence summary judgment. Specialty Retailers, Inc. (SRI) sued Aviex Jet, Inc., Richard L. Fuqua, and David D. Trigg for causes of action arising from the operation of a corporate jet. Fuqua moved for a no-evidence summary judgment, and it was granted as to all claims. Fuqua's case was then severed, and the summary judgment order became final. Finding the summary judgment proper as to all but two causes of action, we affirm in part and reverse and remand in part.

### Facts

In this case, as the facts below reveal, SRI claims that Aviex, through two actors, namely Fuqua and Trigg, acting unlawfully and fraudulently, deprived it of income and damaged its corporate jet by not performing required maintenance.

SRI, which operates several chains of department stores, owned a Cessna Citation II SP business jet. SRI contracted with Aviex to manage and operate the jet on their behalf; providing whatever flight crews, maintenance, or other operational services as might be necessary. When SRI did not need the Cessna, Aviex would

operate it as a charter with the net revenue being divided between SRI and Aviex. Since the maintenance of an aircraft is dependent on the amount of flight hours logged, a set portion of the revenue was also to be set aside for the Cessna's regular maintenance.

Fuqua was a director of Aviex, and owned its stock in trust for his children. Trigg was Aviex's director of operations, and later its president.

In 1994, the Federal Aviation Administration began an investigation of Aviex based on an anonymous tip to its safety hotline. The FAA discovered that Aviex had failed to log hundreds of hours of flight time on the aircraft it operated. As for the Cessna specifically, the FAA determined that Aviex failed to log a total of 550 hours of flight time and 365 landings. SRI was not given any revenue from these flights and, because the hours had not been logged, necessary maintenance was not performed.

The FAA and Aviex entered into a consent decree, signed by Fuqua, which imposed a fine of $98,200, required that Aviex update all of its flight logs, and banned David Trigg from holding any federally regulated management position, i.e., chief pilot, director of operations, and director of maintenance. In response, Fuqua named Trigg to be Aviex's president, which is not a federally regulated management position. As president, however, Trigg had authority over those federally regulated positions which he himself was banned from holding. Fuqua then filled those federally regulated positions after consulting with Trigg.

SRI was not informed of the FAA investigation, and, rather than telling SRI the full extent of its false reporting, Aviex told SRI that it had failed to log only 65.2 hours of flight time. Aviex then continued to fly the Cessna without informing and compensating SRI.

Eventually, SRI decided to purchase a larger aircraft. Aviex agreed to act as an agent for SRI in finding both a new aircraft and a buyer for the Cessna. SRI sold the Cessna to Corporate Fleet Services (CFS) and purchased an Israeli Aircraft Industries Westwind business jet. The Westwind, which was owned by a South American company, was being brokered by Miami-based Aero consulting corporation. Aviex bypassed Aero and purchased the jet for SRI directly from its owners. SRI and Aviex then entered into an agreement concerning the Westwind similar to the one concerning the Cessna. When the Westwind jet was not being used by SRI, it would be chartered by Aviex and the revenue split.

In the meantime, CFS planned to have the interior of the Cessna refurbished. While this work was being done, numerous mechanical defects were found. The Cessna's deterioration was so severe that CFS had to return the plane to the manufacturer's plant for repairs. While there, even more defects were found. The defects included frayed control surface cables, leaking fuel tanks, and cracked heating elements in the wings. When Aviex refused to remedy the problem, SRI spent "hundreds of thousands of dollars" to bring the Cessna up to the condition Aviex represented it was in at the time of the sale.

After realizing that Aviex was responsible for this wholesale deterioration of the Cessna, SRI canceled the Westwind agreement with Aviex. SRI also inspected the Westwind aircraft and discovered that the pre-purchase inspection had not been completed, that the aircraft had not been placed on Aviex's charter certificate, that numerous repairs were needed before the plane could fly legally, and that Aero consulting had placed a lien on the aircraft for its brokerage fee.

SRI sued Aviex, later adding Trigg and Fuqua as parties, seeking its share of revenue from the embezzled flight time, the return of the maintenance deposits, the cost to repair the Cessna and the Westwind, and the cost to satisfy Areo's lien.

### Adequate Time for Discovery

SRI's third issue, which we will address first, is whether an adequate time for discovery had passed before the trial court granted the no-evidence summary judgment.

██ A party may move for a no-evidence summary judgment only "[a]fter adequate time for discovery." TEX.R. CIV. P. 166a (i). The rule does not require that discovery must have been completed, only that there was "adequate time." *In re Mohawk Rubber Co.*, 982 S.W.2d 494, 498 (Tex.App.-Texarkana 1998, orig. proceeding). The comment to rule 166a(i) explains that "[a] discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion ... would be permitted after the period but not before." TEX.R. CIV. P. 166a (i) comment. This comment, unlike other notes and comments in the rules of civil procedure, was specifically intended to inform the construction and application of the rule. *See id.*

The instant case was first filed on April 18, 1997 with an original discovery deadline of June 27, 1998. SRI filed an amended petition naming Fuqua as a party on January 12, 1998. An extended discovery deadline was set for September 11, 1998. Fuqua filed his motion on Sept. 3, 1998, eight days before that deadline.

██ An adequate time for discovery is determined by the nature of the cause of action, the nature of the evidence necessary to controvert the no-evidence motion, and the length of time the case had been active in the trial court. *See Dickson Constr., Inc. v. Fidelity & Deposit Co. Of Maryland*, 5 S.W.3d 353, 356 (Tex.App.-Texarkana 1999, pet. denied). A court may also look to factors such as the amount of time the no-evidence motion has been on file, whether the movant has requested stricter time deadlines for discovery, the amount of discovery that has already taken place, and whether the discovery deadlines that are in place are specific or vague. *See* William J. Cornelius and David F. Johnson, *Tricks, Traps, And Snares in Appealing a Summary Judgment in Texas*, 50 BAYLOR L.REV. 813 (1998). We review a trial court's determination that there has been an adequate time for discovery for an abuse of discretion. *See Dickson Constr.*, 5 S.W.3d at 356.

██ SRI's lawsuit had been ongoing for approximately sixteen months at the time of the motion. The trial judge had already granted one extension to the discovery period. SRI, with only eight days to go before the end of the extended discovery period, had not deposed Fuqua. SRI only noticed Fuqua's deposition after the motion for no-evidence summary judgment was filed. It was not an abuse of the trial judge's discretion, considering all of the above factors, to conclude that an adequate time for discovery had passed.

██ SRI argued that Fuqua purposefully delayed the discovery process, artfully delaying with promises to supplement his interrogatories while preparing his no-evidence motion.[1] A party should not be able to abuse the discovery process, withhold key evidence from their opponents, and then use that lack of evidence to win a judgment. *See* Robert W. Clore, *Texas Rule of Civil Procedure 166a(i): A New Weapon for Texas Defendants*, 29 ST. MARY'S L.J. 813, 843 (1998) (saying that a non-movant "who could show the defendant delayed discovery by failing to answer the plaintiff's interrogatories would likely be entitled to further discovery"). If

---

1. SRI points to Fuqua's amended interrogatory responses. For example, in response to a question about Fuqua's ownership of Aviex stock, Fuqua originally answered that he did not "individually" own any stock. In the amended answer, he admitted to owning 39,- 000 shares as a trustee. The question specifically asked for "every ownership interest ... of any kind whatsoever." SRI argues that, had Fuqua been forthright originally, they would have been better prepared for Fuqua's motion.

SRI could show that Fuqua had done so, it would likely be enough to establish that there was not an adequate time for discovery. However, SRI has not made such a showing. There is no evidence that SRI considered Fuqua's responses to be inadequate. SRI's mere accusation that Fuqua abused the discovery process is not sufficient to justify overturning the trial court's ruling.

We overrule this issue.

### Evidence of a Civil Conspiracy

SRI's fourth issue was whether or not the trial court erred in granting a no-evidence summary judgment when SRI presented more than a scintilla of evidence to support its claim for civil conspiracy.

■ We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See Moore v. KMart Corp.*, 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied). We look at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *See id; Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is properly granted if the respondent fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the respondent's case. *See Moore*, 981 S.W.2d at 269; TEX.R. CIV. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995).

■ The essential elements of a claim of civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *See Times Herald Printing Co. v. A.H. Belo Corp.,* 820 S.W.2d 206, 216 (Tex.App.-Houston[14th Dist.] 1991, no writ). Fuqua's motion asserted that SRI lacked evidence of both a meeting of the minds and of any unlawful acts.

■ SRI brought forward evidence that showed the following: that Fuqua knew the contents of the FAA consent decree because he signed it; that the consent decree barred Trigg from being Aviex's chief pilot, director of operations or director of maintenance; that Fuqua named Trigg to be Aviex's president; that Fuqua filled those three positions based on Trigg's advice; and that Andrew Richards, an Aviex employee, said that Trigg said that he would "work out a deal" with Fuqua if he lost his position as director of operations.

This is not more than a scintilla of evidence. While one could infer a meeting of the minds, there is no evidence of any illegal acts. Under the FAA decree, Trigg was permitted to be Aviex's president, Fuqua was allowed to consult with Trigg about filling the positions, and the three people Trigg recommended for those positions were approved by the FAA. This evidence does no more than create a mere surmise or suspicion that Fuqua, Trigg and Aviex conspired to continue Aviex's fraud.

We overrule this issue.

### Evidence to Pierce the Corporate Veil

Appellant's fifth issue was whether or not the trial court erred in granting a no-evidence summary judgment. SRI claims it presented more than a scintilla of evidence that Aviex's corporate identity should be disregarded and liability im-

posed on Fuqua. SRI contended that Fuqua was liable personally for SRI's claims against Aviex for negligence, gross negligence, negligent supervision, negligent entrustment, negligent misrepresentation, breach of fiduciary duty, and breach of contract.

▮▮▮▮▮ The various doctrines for piercing the corporate veil are not substantive causes of action. *See Mapco, Inc. v. Carter,* 817 S.W.2d 686, 688 (Tex.1991). Rather, they are a means of imposing on an individual a corporation's liability for an underlying cause of action. *See Farr v. Sun World Sav. Ass'n,* 810 S.W.2d 294, 297 (Tex.App.-El Paso 1991, no writ) (citing *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.,* 456 S.W.2d 476, 480 (Tex.Civ.App.-Fort Worth 1970, no writ)). The results are remedial, expanding the scope of potential sources of relief. *See id.*

Fuqua's motion for no-evidence summary judgment alleged that SRI had no evidence of the underlying causes of action *or* of any doctrine that would allow them to disregard Aviex's corporate form. SRI responded only to the allegation that they lacked evidence to pierce Aviex's veil, calling Fuqua's assertions as to the underlying causes of action "immaterial." SRI detailed alternative reasons why Aviex's corporate veil should be pierced. However, they brought forward no evidence supporting their claims of negligence, gross negligence, negligent supervision, negligent entrustment, negligent misrepresentation, breach of fiduciary duty, and breach of contract.

▮▮▮▮▮ Since SRI brought forward no evidence to support its claims of negligence, gross negligence, negligent supervision, negligent entrustment, negligent misrepresentation, breach of fiduciary duty, and breach of contract, it was not error for the trial judge to grant a no-evidence summary judgment as to those claims. Without an underlying cause of action creating corporate liability, evidence of an abuse of the corporate form is immaterial. We overrule this issue

## Quantum Meruit and Conversion

The final two issues are whether the trial court erred in granting a no-evidence summary judgment as to all causes of action when Fuqua failed to move on SRI's claim for quantum meruit and conversion. SRI filed their first amended petition on January 12, 1998. Fuqua moved for a no-evidence summary judgment on September 3, 1998. SRI filed its second original amended petition on September 14, 1998. Fuqua concedes in his brief that the second amended petition added causes of action for conversion and quantum meruit. SRI contends that Fuqua's motion did not address these claims, so that the court erred by granting a no-evidence summary judgment against them. Fuqua counters that his motion was sufficiently broad to cover all of SRI's claims and that, in the alternative, he addressed those claims in his reply to SRI's response.

▮▮▮▮▮ A motion for a no-evidence summary judgment must specifically "state the elements as to which there is no evidence;" there may be no "conclusory motions or general no-evidence challenges to an opponent's case." Tex.R. Civ. P. 166a(i) and comment. However, a plaintiff may not side-step a no-evidence summary judgment merely by filing an amended claim. *See Lampasas v. Spring Center, Inc.,* 988 S.W.2d 428, 437 (Tex.App.-Houston[14th Dist.] 1999, no pet.). If the amended petition only "reiterates the same essential elements in another fashion," then the original motion for summary judgment will adequately cover the new variations. *Id.*

▮▮▮▮▮ As discussed previously, SRI's other claims, which Fuqua adequately addressed in the motion for summary judgment, are negligence, gross negligence, negligent supervision, negligent entrustment, negligent misrepresentation, breach of fiduciary duty, and breach of contract.

SRI's claims for quantum meruit and conversion do not reiterate the same essential elements as the original causes of action. Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the owner's right. *See Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992). A claim for quantum meruit is based on the plaintiff rendering valuable services or furnishing materials to the person sought to be charged who accepted the services and materials to his benefit under such circumstances that he would reasonably know that the plaintiff expected to be paid for the services or materials. *See Sourignavong v. Methodist Healthcare System of San Antonio, Ltd.,* 977 S.W.2d 382, 385 (Tex.App.-Amarillo 1998, no pet.) (citing *Bashara v. Baptist Memorial Hospital System,* 685 S.W.2d 307, 310 (Tex.1985),. Clearly, these are new causes of action with distinct elements. Fuqua's motion, however broadly it may have been written, simply did not address SRI's claims for conversion and quantum meruit. It is axiomatic that the motion did not state an element of those claims for which SRI lacked evidence.

Fuqua argues, in the alternative, that his reply to SRI's response to his motion was specific enough to support the judgment. In his reply he stated "SRI has still failed to present one piece of evidence to support any of its causes of action," which he claims covers conversion and quantum meruit. This is patently insufficient. SRI was under no burden to present any evidence to support its claims for conversion and quantum meruit because Fuqua had not challenged the evidence supporting those claims in his motion. TEX.R. CIV. P. 166a(i).

Fuqua's motion did not address conversion and quantum meruit; therefore, the court erred in granting a no-evidence summary judgment as to those claims.[2] We

sustain this issue, and reverse and remand that portion of the case to the trial court. We affirm the remainder of the judgment.

---

**2.** SRI also argued, in the alternative, that it presented more than a scintilla of evidence to support its claims for quantum meruit and

conversion. Having found that these claims were not properly at issue, we do not need to reach this analysis.