**Opinion issued March 27, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00075-CV

————————————

## DWAYNE CARPENTER, Appellant

## V.

## CAMPBELL HAUSFELD CO. AND CAMPBELL HAUSFELD/SCOTT FETZER COMPANY, INC., Appellees

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1,006,290**

---

## MEMORANDUM OPINION

In this products liability case, Dwayne Carpenter sued Campbell Hausfeld

Co. and Campbell Hausfeld/Scott Fetzer Company, Inc. ("Campbell Hausfeld") for

design defect and negligence arising out of an incident in which a strap securing a Campbell Hausfeld air compressor broke, causing the compressor box to fall onto Carpenter. The trial court rendered summary judgment in favor of Campbell Hausfeld. In three issues, Carpenter contends that (1) the trial court erred in granting summary judgment by ruling that his lay testimony failed to raise a fact issue; (2) the trial court's ruling effectively requires expert testimony in all products-liability cases; and (3) the trial court erroneously granted summary judgment on Carpenter's negligence claim when Campbell Hausfeld's motion only sought summary judgment on Carpenter's design defect claim.

We affirm.

## Background

In December 2009, Carpenter shopped for an air compressor at a local Lowe's store.[1] Carpenter alleged that he attempted to load a "1.2 HP 20-Gallon 125 PSI Electric Air Compressor" manufactured by Campbell Hausfeld into his shopping cart when a strap around the compressor box unexpectedly broke, causing the box to fall on him, knocking him to the floor. Carpenter injured his left hip, leg, shoulder, and arm and sought medical treatment for these injuries. Carpenter asserted a strict products-liability claim against Campbell Hausfeld,

---

[1]    Carpenter also sued Lowe's for premises liability. Carpenter reached a settlement with Lowe's and subsequently nonsuited his claims against Lowe's after the trial court rendered its summary judgment ruling in favor of Campbell Hausfeld. Lowe's is therefore not a party to this appeal.

2

alleging that the strap securing the box was defectively designed and rendered the product unreasonably dangerous.

Campbell Hausfeld moved for no-evidence summary judgment. In this motion, Campbell Hausfeld set out the elements of a strict products-liability claim, as well as the elements of a claim premised on a design defect and the statutory requirements for proving a "safer alternative design." Campbell Hausfeld argued that Carpenter had produced "no evidence of product defect or legitimate argument of liability against Campbell Hausfeld." It further argued that Carpenter could produce no evidence of a "safer alternative design," no evidence that Campbell Hausfeld's actions were a producing cause of Carpenter's injuries, and no evidence of damages.

In response, Carpenter argued that "there is evidence that suggests Campbell Hausfeld's product shipped without the requisite number of safety straps as well as evidence that the safety straps were not strong enough to secure the load of the 108 pound compressor." Carpenter argued that other air compressor boxes located at the Lowe's store, including other boxes for air compressors manufactured by Campbell Hausfeld, were packaged with two straps securing the boxes, indicating that two straps were needed and that a safer alternative design existed. He stated, "Common sense enables one to make the connection that two straps are needed to secure the 108 pound compressor as all of the other compressors were shipped with

two straps. However, the compressor that injured plaintiff was only secured by one strap." Carpenter attached his medical records as summary judgment evidence.

The only other evidence that Carpenter attached to support his summary judgment response was a transcript of a telephone conversation that occurred on April 5, 2011, between Carpenter and a man named Vincent Griffin, who identified himself but not his connection to the case. This exhibit is unsworn, and the only certification contained in this exhibit is from the transcriber of the conversation, who certified that she listened to the recorded conversation and transcribed "a complete, full and true record of the entire conversation conducted therein."[2] Carpenter stated that after he decided to purchase the compressor, he looked around the area for assistance but decided to lift and load the compressor into his shopping cart on his own when he did not see any Lowe's employees in the immediate area. The statement then included the following exchange between Carpenter and Griffin:

| [Griffin]: | [N]ow you indicated that a strap broke, explain to me what you mean by you said a strap broke? |
| [Carpenter]: | From the factory there are two straps around the box. It had one strap and that strap broke. That's why I was trying to pick it up. |

---

[2]   Campbell Hausfeld did not object to the competency of this exhibit as summary judgment evidence.

4

| | |
|---|---|
| [Griffin]: | Okay, so the box that you had, it only had one strap, but the other boxes had two straps? |
| [Carpenter]: | That's correct. |
| [Griffin]: | Okay, and you are aware that the boxes around it had two straps. But the one that you were picking up only had one? |
| [Carpenter]: | Well the other boxes. There were different size compressors. But the box. The compressor that I wanted, to the best I remember there was only one there. Or maybe two. I'm not sure. But the compressor I wanted, it only had one strap on it. |
| [Griffin]: | And you picked it up by that one strap? |
| [Carpenter]: | And kind of a lid on the box. |
| [Griffin]: | Okay, so after you attempted to pick this up by the strap, that's when you lost, what happened at that point? I don't want to put words in your mouth. What happened after you picked it up? |
| [Carpenter]: | Okay, when I picked it up the strap broke and then that's when I fell on my left side. |

Carpenter did not introduce the box or pictures of the box into evidence. He did not present any other evidence concerning the incident, the manner in which the compressor at issue was packaged, the type of strap that was used to secure the particular compressor, the manner in which Campbell Hausfeld generally packages its compressors, or any evidence showing whether the compressor at issue was defectively packaged at the time it left Campbell Hausfeld's facility for shipment to the Lowe's store.

5

In reply, Campbell Hausfeld argued that Carpenter "has no basis or personal knowledge for knowing who applied the straps around the box, who designed the set up, or to say that had there been two straps present he would not have been injured." It also argued that Carpenter produced no evidence concerning the intended purpose of the straps, such as whether they were intended to be used to lift the compressor box. Campbell Hausfeld also objected to Carpenter's medical records on hearsay grounds.

After Campbell Hausfeld had moved for summary judgment but before the trial court had ruled on the motion, Carpenter filed an amended petition. In addition to his premises liability claim against Lowe's and his strict products-liability claim against Campbell Hausfeld, he also asserted a negligence claim against Campbell Hausfeld. His petition stated, "In the alternative, Plaintiff asserts that the foregoing conduct of Defendants constituted negligence, as that cause of action is defined under Texas law." Campbell Hausfeld did not amend its summary judgment motion to address this claim.

The trial court subsequently rendered summary judgment in favor of Campbell Hausfeld on "all claims asserted by Dwayne Carpenter." After the trial court signed an order granting Carpenter's nonsuit of Lowe's and dismissing Carpenter's premises liability claim, this appeal followed.

## Summary Judgment

In his first issue, Carpenter contends that the trial court erred in holding that his lay testimony did not raise a fact issue on the challenged elements of his strict products-liability claim.

### A.    *Standard of Review*

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).   After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial.   TEX. R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.).   The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).   The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design & Fabrication*, 994 S.W.2d at 834; *see also Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) ("More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'rises to a

level that would enable reasonable and fair-minded people to differ in their conclusions.'" (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995))). To determine if the nonmovant raises a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

When, as here, the trial court's summary judgment order does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the summary judgment motion are meritorious. *Providence Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### B.    *Strict Products-Liability Claim*

In Texas, Restatement (Second) of Torts section 402A governs strict products-liability claims. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997); *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 367 (Tex. App.— El Paso 2011, no pet.). Section 402A provides:

(1)    [O]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

   (a)    the seller is engaged in the business of selling such a product, and

8

> (b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*Grinnell*, 951 S.W.2d at 426; *see also* RESTATEMENT (SECOND) OF TORTS § 402(A) (1965). To hold a seller of a product liable, the product must reach the user in essentially the same condition as when it left the seller's possession. *Zavala*, 355 S.W.3d at 368; *see also* RESTATEMENT (SECOND) OF TORTS § 402(A) cmt. g ("The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."). Section 402A comment g specifies that a seller is not liable if it delivers the product in a safe condition "and subsequent mishandling or other causes make it harmful by the time it is consumed." RESTATEMENT (SECOND) OF TORTS § 402A cmt. g. The injured plaintiff bears the burden of establishing that the product was in a defective condition at the time it left the hands of the seller, "and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained." *Id.*

A product may be unreasonably dangerous because of a defect in marketing, design, or manufacturing. *Grinnell*, 951 S.W.2d at 426; *Zavala*, 355 S.W.3d at 368. To recover for a products-liability claim alleging a design defect, the plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect

9

was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256–57 (Tex. 1999); *Zavala*, 355 S.W.3d at 369; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a) (Vernon 2011) (providing that, in design defect cases, claimant must prove by preponderance of evidence that safer alternative design existed and defect was producing cause of injury). "Safer alternative design" is defined as "a product design other than the one actually used . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(b); *see Honda of Am. Mfg., Inc. v. Norman*, 104 S.W.3d 600, 605 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (tacitly approving jury charge that followed language of section 82.005). "Proof of a product failure, standing alone, is not sufficient to raise a fact question as to whether the product was defective or that it was defective when it left the hands of the manufacturer." *Zavala*, 355 S.W.3d at 370; *see also Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006) ("Texas law does not generally recognize a product failure standing alone as proof of a product defect.").

Here, Carpenter alleged that the air compressor at issue was defectively designed because it only had one strap securing the box. He thus complains only about the packaging of the air compressor; he does not complain that a component of the compressor itself was defective and caused him injury. Carpenter attached a

10

transcript of his April 5, 2011 recorded, unsworn statement as summary judgment evidence. In this statement, Carpenter stated that other compressor boxes in the area of the store had two straps securing the box, "[b]ut the compressor [he] wanted, it only had only one strap on [the box]." Carpenter's statement was the only evidence that he presented concerning the condition of the particular compressor box at the time of his alleged injury. The compressor box with the broken strap was not introduced into evidence.

Campbell Hausfeld sold its air compressors through a third party, Lowe's, which required shipment of the compressor from Campbell Hausfeld to Lowe's before the compressor could be purchased by a consumer such as Carpenter. Thus, necessarily, several individuals not involved with Campbell Hausfeld came into contact with this compressor box and its packaging both during transit and at Lowe's. Carpenter presented no evidence of the condition of the compressor box at the time that it left Campbell Hausfeld's facility before being shipped to Lowe's. He presented no evidence that Campbell Hausfeld, in general, packages its air compressors with only one strap securing the box as opposed to two straps. He presented no evidence that this particular compressor box only had one strap securing it when it left Campbell Hausfeld's facility. Thus, based on the summary judgment evidence, as well as Carpenter's acknowledgment on appeal that other Campbell Hausfeld air compressors at the Lowe's store were secured by two

11

straps, it is equally likely that, for example, the box had two straps when it left Campbell Hausfeld's facility, but one strap was inadvertently removed during transit to Lowe's or after the box arrived at Lowe's and was being displayed for purchase. *See Zavala*, 355 S.W.3d at 370 ("To raise a genuine issue of material fact, the evidence must transcend mere suspicion. Evidence that is so slight as to make any inference a guess is in legal effect no evidence."); *see also Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) ("The equal inference rule provides that a jury may not reasonably infer an ultimate fact from meager circumstantial evidence 'which could give rise to any number of inferences, none more probable than another.'") (quoting *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997)).

To establish his strict products-liability claim based on a design defect, Carpenter had to demonstrate that the compressor box was defective "when it left the hands of the manufacturer."[3] *See Zavala*, 355 S.W.3d at 370; *see also*

---

[3] To the extent Carpenter argues that a manufacturing defect, as opposed to a design defect, caused his injuries, we note that in strict products-liability cases based on a manufacturing defect, the plaintiff still must establish that the manufacturing defect existed at the time the product left the hands of the manufacturer. *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 858 (Tex. App.—Dallas 2007, pet. denied) ("The plaintiff must prove the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries."); *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 330 (Tex. App.—Austin 2002, pet. denied) ("[T]he plaintiff must trace the defect to the manufacturer."); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (stating that manufacturing defect exists when product deviates, in its

RESTATEMENT (SECOND) OF TORTS § 402A(1)(b) (providing that seller is liable for product defect if, among other things, product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold"); *Id.* cmt. g (explaining that seller is not liable unless product is in defective condition at time it leaves seller's hands, that seller is not liable if it delivers product in safe condition and subsequent mishandling causes defect, and that injured plaintiff bears burden of establishing that product was in defective condition at time it left seller). Thus, to survive summary judgment, Carpenter had to present at least a scintilla of evidence that the compressor box that allegedly injured him was in a defective condition at the time it left Campbell Hausfeld's hands.

Even viewing the evidence presented in the light most favorable to Carpenter, as we must when reviewing the trial court's rendition of summary judgment, we conclude that Carpenter presented no evidence of the condition of the box, and thus no evidence that the compressor box was in a defective condition at the time that it left Campbell Hausfeld. Similarly, Carpenter, who acknowledges in his appellate brief that "other compressors, including other Hausfeld compressors, were shipped with two safety bands," presented no evidence that Campbell Hausfeld did not generally employ the "safer alternative design" of using

---

construction or quality, from specifications or planned output in manner that renders it unreasonably dangerous).

13

two straps to secure its air compressor boxes and did not employ the design on this particular box when it left Campbell Hausfeld's facility; thus, he presented no evidence that a "safer alternative design" existed that Campbell Hausfeld did not actually use.[4]

We hold that the trial court correctly granted summary judgment on Carpenter's strict products liability claim.

We overrule Carpenter's first issue.

## C.    *Expert Testimony*

In his second issue, Carpenter argues that the trial court's rendition of summary judgment in favor of Campbell Hausfeld necessarily imposes a requirement of expert testimony to survive summary judgment in all products-liability cases.  We do not agree.

---

[4]    Although Carpenter stated in his recorded statement that other compressor boxes at the Lowe's store were secured by two straps, which he then used as evidence that a "safer alternative design" existed, he presented no evidence of the type of straps that secured the boxes, the material out which these straps were made, whether the straps were designed merely to hold the packaging together or whether they were designed to be used as "load bearing" or as an aid to move and lift the compressor boxes, or the type of straps that should have been used to secure the compressor box.  He also presented no evidence that, had the compressor box at issue been secured by two straps, in "reasonable probability" that design "would have prevented or significantly reduced the risk of the claimant's personal injury."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(b)(1) (Vernon 2011) (defining "safer alternative design"); *MCI Sales & Serv., Inc. v. Hinton*, 272 S.W.3d 17, 31 (Tex. App.—Waco 2008), *aff'd*, 329 S.W.3d 475 (Tex. 2010).

14

Here, the trial court did not specify the grounds on which it rendered summary judgment in favor of Campbell Hausfeld. Carpenter assumes that the trial court granted summary judgment because Carpenter presented only his lay testimony and that the trial court would instead require expert testimony to raise a fact issue on each element of his strict products-liability claim. We do not agree that the trial court's summary judgment ruling necessarily requires this conclusion. The trial court could have determined, as we have held, that Carpenter presented no evidence, not even lay testimony, on whether the air compressor left Campbell Hausfeld in a defective condition, a necessary element of his strict products-liability claim. Similarly, the trial court also could have determined, as we have held, that Carpenter presented no evidence that a safer alternative design existed that Campbell Hausfeld did not actually use in this instance. The trial court therefore could have resolved the case in favor of Campbell Hausfeld without requiring Carpenter to present expert testimony on every essential element of his strict products liability claim.

We overrule Carpenter's second issue.[5]

---

[5] We express no opinion on whether securing the compressor box with only one strap constitutes a design or manufacturing defect, nor do we express an opinion on whether Carpenter was required to present expert testimony for his claims to survive summary judgment.

15

### D. Summary Judgment on All of Carpenter's Claims

In his third issue, Carpenter contends that the trial court erroneously granted summary judgment on his negligence claim because Campbell Hausfeld's summary judgment motion "did not challenge a single element of [Carpenter's] negligence cause of action." Campbell Hausfeld argues that Carpenter's negligence claim, which Carpenter first asserted after Campbell Hausfeld had moved for summary judgment, was encompassed by his strict products liability claim, and, thus, its summary judgment motion addressing the strict products liability claim sufficiently addressed the negligence claim. We agree with Campbell Hausfeld.

If, after a motion for summary judgment has already been filed, a party amends his petition to raise a new theory of liability—rather than merely restating the same essential elements of the original claims in another fashion—then the trial court cannot grant summary judgment as to the new theories of liability. *See Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 387 (Tex. App.—Fort Worth 2003, pet. denied); *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 147 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("If the amended petition only 'reiterates the same essential elements in another fashion,' then the original motion for summary judgment will adequately cover the new variations.") (quoting *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 437 (Tex. App.—Houston [14th

16

Dist.] 1999, no pet.)). However, summary judgment may be proper when a ground asserted in a summary judgment motion conclusively negates a common element of both the newly and previously pleaded claims or when the original motion is broad enough to encompass the newly asserted claims. *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Generally, strict products liability and negligence are separate causes of action with different elements. *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied) ("Traditionally in Texas law, negligence and strict liability have been distinct causes of action."). However, when the plaintiff alleges no negligence other than whether the product was unreasonably dangerous when it was sold, the negligence theory is "encompassed and subsumed" in the defective product theory, and the plaintiff's burden at trial "would be to prove injury resulting from a product defect." *Shaun T. Mian Corp.*, 237 S.W.3d at 857; *see also Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 476 (Tex. App.—Dallas 2011, pet. granted) ("Here, however, because the only negligence Ruiz alleged related to the design of the product, the negligence theories were subsumed and encompassed in the defective product theory, and Ruiz's burden at trial was to prove injury resulting from defective design.").

Here, Carpenter asserted a strict products-liability claim against Campbell Hausfeld based on the allegedly defective design of the air compressor packaging. Campbell Hausfeld moved for no-evidence summary judgment on this claim. While Campbell Hausfeld's summary judgment was pending before the trial court, Carpenter amended his petition to add a negligence claim. Carpenter alleged the following in his second amended petition:

## G. Cause of Action- Products Liability

14. Plaintiff alleges that the product in question, the Campbell Hausfeld 1.2 HP 20-Gallon 125 PSI Electric Air Compressor was defective and unsafe for its intended purposes; in that said defects more specifically identified below existed at the time that the component was designed, manufactured and/or sold by Defendants. In this connection, the product was defectively designed in that such defects rendered the product unreasonably dangerous, which was a proximate or producing cause of the injuries suffered by Plaintiff.

15. As a proximate result of the defect(s) and the unreasonably dangerous condition of the product in question, Plaintiff suffered serious bodily injury. Plaintiff pleads the doctrine of strict liability as set forth in section 402(A) RESTATEMENT OF TORTS (Second). The [packaging] placed into the stream of commerce by Defendants was unsafe for its intended and reasonably foreseeable use because it was more dangerous than the ordinary consumer would have anticipated. It was so dangerous that during foreseeable use the risk of injury outweighed the utility of its design, and it was defective and faulty so as to render it unreasonably dangerous to the user or consumer.

## H. Cause of Action - Negligence

16. In the alternative, Plaintiff asserts that the foregoing conduct of Defendants constituted negligence, as that cause of action is defined under Texas law.

18

Thus, the only act of negligence that Carpenter has asserted is whether Campbell Hausfeld defectively designed the air compressor packaging, such that the packaging rendered the compressor unreasonably dangerous when sold. We conclude that Carpenter's negligence theory is "encompassed and subsumed" in his strict products-liability theory, and, thus, his burden at trial would be to prove that the defectively designed product caused his injuries. *See Shaun T. Mian Corp.*, 237 S.W.3d at 857.

We hold that, under these facts, Campbell Hausfeld's original summary judgment motion addressing Carpenter's strict products-liability cause of action sufficiently encompassed Carpenter's later-added negligence cause of action, and the trial court therefore properly rendered summary judgment in favor of Campbell Hausfeld on both of Carpenter's causes of action. *See Rotating Servs. Indus.*, 245 S.W.3d at 487; *Specialty Retailers*, 29 S.W.3d at 147.

We overrule Carpenter's third issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.